[Cite as *State v. Newell*, 2024-Ohio-939.]

IN THE COURT OF APPEALS OF OHIO

TENImpl APPELLATE DISTRICT

State of Ohio,                               :

     Plaintiff-Appellee,             :

                                   No. 21AP-648

v.                                           :       (C.P.C. No. 20CR-5109)

James D. Newell,                             :       (REGULAR CALENDAR)

     Defendant-Appellant.            :

D E C I S I O N

Rendered on March 14, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee.

**On brief:** *Law Offices of Mark J. Miller*, *LLC*, and *Mark J. Miller*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendant-appellant, James D. Newell, appeals a judgment of the Franklin County Court of Common Pleas convicting him, pursuant to a guilty plea, of attempted burglary and burglary. For the following reasons, we affirm that judgment.

**I. Facts and Procedural History**

{¶ 2} On October 29, 2020, Newell was indicted on one count of attempted burglary, a felony of the third degree in violation of R.C. 2923.02 and 2911.12; one count of burglary, a felony of the second degree in violation of R.C. 2911.12; and one count of theft, a felony of the fifth degree in violation of R.C. 2913.02. All of these charges arose out of Newell's actions on July 26, 2020.

{¶ 3} Newell initially entered a plea of not guilty. However, on September 28, 2021, Newell appeared before the trial court, withdrew his plea of not guilty, and entered a plea

of guilty to one count of attempted burglary and one count of burglary. During the plea hearing, the prosecutor informed the court "this was a case that was originally assigned to a former prosecutor" who "made [a] plea offer to defense counsel back in January." (Sept. 28, 2021 Tr. at 3.) The prosecutor represented it was "not an offer that the victim is happy with, or that I would have considered at the time; but since the offer was made by my office, I feel it appropriate that we continue that offer. And so that's why the offer is still on the table and offered to Mr. Newell today." (Sept. 28, 2021 Tr. at 3-4.)

{¶ 4} The prosecutor then explained that, in the early morning hours of July 26, 2020, Newell "attempted to gain entrance into [the] back of a residence on Tanbark Court in Galloway, Ohio." (Sept. 28, 2021 Tr. at 4.) Newell's failure to access the Tanbark Court residence was captured by the homeowner's home video surveillance system. Approximately 45 minutes later, Newell successfully broke into a house located on Shelba Drive in Galloway. The Shelba Drive residence's home video surveillance system showed Newell in the backyard shortly after 4:00 a.m. The Shelba Drive home alarm "was tripped at 4:32 a.m., * * * when the sliding glass door was opened for [Newell] to exit the home." (Sept. 28, 2021 Tr. at 4.) Although the homeowners were not home, their teenage son was sleeping in the house when Newell burglarized it. The homeowners received an alarm alert and immediately called their son, who called police. Newell stole "a number of items, * * * including jewelry" from the Shelba Drive residence. (Sept. 28, 2021 Tr. at 5.)

{¶ 5} During the plea hearing, the trial court reviewed the plea agreement with Newell, asking him if he had signed the agreement, whether he had discussed the agreement with his counsel before signing it, and whether his counsel "explain[ed] everything in the form" to him. (Sept. 28, 2021 Tr. at 6-7.) Newell answered affirmatively to each of those questions. The trial court noted the plea form indicated that "you're going to plead guilty to Count One and Count Two of the indictment," and "Count Three is going to be dismissed by you pleading guilty to those two counts." (Sept. 28, 2021 Tr. at 7.) Newell concurred. The court informed Newell of the maximum sentence for a felony of the second degree, as well as for a felony of the third degree. The court summarized by stating "[t]heoretically, by pleading guilty today, you could serve a total of 15 years in prison." (Sept. 28, 2021 Tr. at 7-8.) Newell stated he understood the possible sentences. The trial court then noted "there's a joint recommendation that you serve a minimum sentence of

two to three years at the Ohio Department of Rehabilitation and Corrections." (Sept. 28, 2021 Tr. at 8.) Again, Newell stated he understood.

{¶ 6} The trial court also reviewed with Newell the rights he was giving up by entering a plea. Thereafter, Newell entered a guilty plea to one count of burglary and one count of attempted burglary. The trial court found "[Newell] has appeared in open court with the assistance of counsel," that "[h]e has demonstrated a full understanding of the maximum possible penalties," and "has made a knowing, intelligent and voluntary waiver of his rights." The court then "accept[ed]" Newell's "change of plea." (Sept. 28, 2021 Tr. at 12.)

{¶ 7} After accepting the change of plea, the trial court indicated it was going to defer sentencing Newell until it had reviewed a presentence investigation report. The trial court informed Newell that "you're going to meet with our probation officer * * * about this offense. * * * I want you to be upfront with them in that report." (Sept. 28, 2021 Tr. at 13.) The trial judge further stated "I indicated that I was probably going to go along with that joint recommendation that we have, but I want to see you being honest and showing - - taking responsibility when you have that [presentence investigation] interview." (Sept. 28, 2021 Tr. at 13.)

{¶ 8} On October 28, 2021, the trial court conducted a sentencing hearing during which the court noted Newell had previously pled guilty to one count of attempted burglary and one count of burglary, and the court had "ordered a presentence investigation report" that it "had a chance to review." (Oct. 28, 2021 Tr. at 2.) The trial court also informed the parties it had reviewed a victim impact statement authored by the homeowners of the Shelba Drive residence. One of the homeowners then stated "[m]y seven-year-old is traumatized from the situation. She no longer feels safe in her own home. She won't even sleep in her own bed anymore because she doesn't know if this will ever happen again." (Oct. 28, 2021 Tr. at 5.) The homeowner asked "[h]ow does someone spend four years in jail for this his first time, released on parole, but then commits the same crime, with my 16-year-old son home alone, not only the same crime, but the same neighborhood three houses down from his first offense?" (Oct. 28, 2021 Tr. at 5.) She concluded "[Newell] has zero remorse for his crime and what he has done to our family. I don't feel like justice is being served." (Oct. 28, 2021 Tr. at 5.)

{¶ 9} Newell's counsel addressed the trial court and requested it "follow the joint recommendation in this case." (Oct. 28, 2021 Tr. at 7.) Regarding that recommendation, the trial court stated "it is a principle of plea negotiations that the Court is not bound by any recommendation. It is merely that, a recommendation." (Oct. 28, 2021 Tr. at 10.) The trial court went on to say "[g]iven that Mr. Newell had previously served a term of incarceration for the same offense, a Burglary, * * * that he was on post-release control supervision for that offense at the time of these new offenses, I do not find that the joint recommendation is appropriate in this matter." (Oct. 28, 2021 Tr. at 10.)

{¶ 10} The trial court orally pronounced Newell would receive a sentence of 12 months incarceration for attempted burglary, to run concurrent to a 6-year term of incarceration for burglary "for a total sentence, an indeterminate sentence, of six to nine years in prison," with 372 days of jail-time credit. (Oct. 28, 2021 Tr. at 10.) By judgment entry filed November 5, 2021, the trial court imposed a prison term of 6 to 9 years on Count 1, and 12 months on Count 2, and the court ordered the sentences to run concurrently.

## II. Assignments of Error

{¶ 11} Newell now appeals the November 5, 2021 judgment, and assigns the following three assignments of error for this court's review:

> [I.] The trial court rendered Appellant's plea involuntary and violated Appellant's State and Federal Constitutional rights by not following the joint recommendation of sentence and imposing a sentence that greatly exceeded the agreed-upon sentencing recommendation.
>
> [II.] The trial court abused its discretion in rejecting the joint recommendation of the parties and sentencing Appellant to a sentence excessively more than the recommendation.
>
> [III.] As amended by the Reagan Tokes Act, the Ohio Revised Code's sentences for first and second degree qualifying felonies violates the Constitutions of the United States and the State of Ohio.

## III. Analysis

{¶ 12} By his first assignment of error, Newell argues the trial court rendered his plea involuntary by failing to follow the joint sentencing recommendation and by imposing a sentence greatly exceeding the recommended sentence. Newell contends he entered his guilty plea relying on the two-year joint recommendation which the trial court "knew about

and stated that it was 'probably' going to follow if the [a]ppellant showed responsibility." (Appellant's Brief at 5.)

{¶ 13} Due process requires that " '[w]hen a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily.' " *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). The enforcement of a plea that does not satisfy each of these three criteria is unconstitutional under both the United States and Ohio Constitutions. *Id.*

{¶ 14} A trial court is not bound by a jointly recommended sentence in a plea agreement. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 28. Thus, " '[a] trial court does not err by imposing a sentence greater than "that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor." ' " *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005-Ohio-3674, ¶ 6, quoting *State v. Buchanan*, 154 Ohio App.3d 250, 2003-Ohio-4772, ¶ 13 (5th Dist.), quoting *State v. Pettiford*, 12th Dist. No. CA2001-08-014 (Apr. 22, 2002). Preferably, a trial court will explicitly inform a defendant of its ability to deviate upward from the recommended sentence at the plea hearing. *State v. Melson*, 2d Dist. No. 2022-CA-53, 2023-Ohio-1231, ¶ 11; *State v. Vargyas*, 6th Dist. No. WD-20-068, 2021-Ohio-3383, ¶ 10; *State v. Downing*, 2d Dist. No. 2019-CA-72, 2020-Ohio-3984, ¶ 34; *State v. Harder*, 6th Dist. No. OT-14-005, 2015-Ohio-795, ¶ 7. However, a trial court may instead deliver the necessary warning by advising the defendant of the maximum prison term he or she faces. *Melson* at ¶ 13; *Vargyas* at ¶ 12-13, 16; *Downing* at ¶ 37-39; *Harder* at ¶ 8, 12. Additionally, the plea agreement may inform the defendant that the trial court is not bound to follow the recommended sentence. *Melson* at ¶ 13; *Vargyas* at ¶ 12-13, 16; *Downing* at ¶ 36-37, 39; *Harder* at ¶ 9-12.

{¶ 15} In this case, the plea agreement Newell signed stated "I understand that the prosecution and defense jointly recommend to the Court the following sentence(s), *which is/are not binding upon the Court*: A mandatory indefinite sentence of 2 – 3 years at the ODRC." (Emphasis added.) (Entry of Guilty Plea at 1.) Moreover, in the signed plea agreement, Newell "assert[ed] that no person has * * * promised me leniency, or in any other way coerced or induced me to plead 'Guilty' as indicated above; my decision to plead 'Guilty,' thereby placing myself completely and without reservation of any kind upon the

mercy of the Court with respect to punishment, represents the free and voluntary exercise of my own will and best judgment." (Entry of Guilty Plea at 3.)

{¶ 16} During the sentencing hearing, Newell confirmed to the trial court that his attorney had reviewed "everything" in the plea agreement to him. (Sept. 28, 2021 Tr. at 6.) The trial court then explained to Newell it could sentence him to 2 to 12 years imprisonment for burglary, a second-degree felony, and up to 36 months imprisonment for attempted burglary, a third-degree felony. The trial court followed up by stating "[t]heoretically, by pleading guilty today, you could serve a total of 15 years in prison." (Sept. 28, 2021 Tr. at 8.) Newell replied that he understood the possible sentences.

{¶ 17} Based on the signed plea agreement and the plea colloquy, we conclude Newell understood at the time he changed his plea that the trial court was not required to follow the state's recommendation as to sentencing and he faced a potential maximum prison term that far exceeded the recommended sentence. Given this knowledge, Newell entered his guilty plea apprehending that the trial court had the ability to impose a greater sentence than the recommended sentence.

{¶ 18} Newell, however, next asserts the trial court's involvement in the plea negotiations—specifically, its representation that it would probably follow the joint sentence recommendation—made the recommendation binding on the trial court.

{¶ 19} Due to a judge's position in the criminal justice system, judicial participation in the plea-bargaining process "presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume." *State v. Byrd*, 63 Ohio St.2d 288, 293 (1980). Although the Supreme Court of Ohio "strongly discourages" a trial judge's participation in the plea-bargaining process, a plea is not presumptively invalid because of such involvement. *Id.* Rather, "a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." *Id.* An appellate court considers the totality of the record to determine whether a trial judge's participation in plea negotiations affected the voluntariness of the plea. *State v. Finroy*, 10th Dist. No. 09AP-795, 2010-Ohio-2067, ¶ 7.

{¶ 20} When a trial court promises a certain sentence, that promise becomes an inducement to enter a plea and, unless that sentence is given, the plea is not voluntary. *State v. Elcess*, 12th Dist. No. CA2023-01-005, 2023-Ohio-2820, ¶ 13; *State v. Harrison*,

2d Dist. No. 28526, 2020-Ohio-4154, ¶ 22; *State v. Korecky*, 8th Dist. No. 108328, 2020-Ohio-797, ¶ 13; *State v. Wallace*, 9th Dist. No. 14CA010609, 2015-Ohio-4222, ¶ 10. However, "a trial court generally does not improperly participate in plea negotiations as to sentencing when it does not promise a particular sentence or otherwise encourage the defendant to enter a plea in order to receive a more lenient sentence." *Harrison* at ¶ 23.

**{¶ 21}** In this case, at some point prior to the plea hearing, the parties and the trial judge appear to have had an off-the-record conversation regarding the plea bargain. We infer that this conversation occurred because the transcript of the plea hearing includes the trial judge's reference to a comment that he made during that conversation. Towards the end of the plea hearing, the trial judge stated that he had previously "indicated that [he] was probably going to go along with that joint recommendation that we have." (Sept. 28, 2021 Tr. at 13.) Based on this comment, we surmise the judge told the parties that he "probably" would impose the jointly recommended sentence on Newell during the off-the-record conversation.

**{¶ 22}** Notably, because the record does not contain the conversation regarding the plea bargain, we do not know whether it occurred before or after Newell signed the plea agreement. If it occurred after Newell signed the plea agreement, the judge did not participate in the plea negotiations and the judge's comment could not have factored into Newell's decision to plead guilty. The comment, then, could not render Newell's plea involuntary.

**{¶ 23}** On appeal, an appellant bears the burden of showing error by reference to matters in the record. *State v. Justice*, 10th Dist. No. 21AP-253, 2022-Ohio-87, ¶ 5. When an appellate court lacks the necessary record to decide whether error occurred, we have no choice but to presume the validity of the trial court's proceedings and affirm. *Id*. Here, given the paucity of the record, Newell cannot direct this court to anything in the record that unequivocally demonstrates the trial court participated in the plea negotiations. Because we cannot determine from the record whether the trial court participated in the plea negotiations, we must presume the validity of the trial court's proceedings and affirm.

**{¶ 24}** Moreover, regardless of when the trial judge stated he would "probably" impose the jointly recommended sentence, that statement does not constitute a promise of a particular sentence. At best, the judge indicated he was likely, but not certain, to impose the two-to-three-year recommended sentence. Additionally, as we stated above, Newell

understood he could receive a longer prison sentence because the plea agreement warned him that the recommended sentence was "not binding upon the Court." (Entry of Guilty Plea at 1.) Having this information, Newell could not construe the judge's comment as a promise that he would impose the recommended sentence. In short, the totality of the circumstances do not demonstrate that the trial judge guaranteed Newell the jointly recommended sentence, thus rendering Newell's plea involuntary when Newell did not receive that sentence.

{¶ 25} In sum, the trial court warned Newell that it could impose a sentence greater than the jointly recommended sentence and it did not promise any particular sentence to Newell. We thus conclude that Newell's guilty plea was voluntary. Accordingly, we overrule Newell's first assignment of error.

{¶ 26} By his second assignment of error, Newell argues the trial court abused its discretion in sentencing him to a prison term that exceeded the two-to-three-year term that the parties jointly recommended. Newell maintains the sentence was unreasonable and unconscionable in light of the trial court's earlier representation that it probably would follow the sentence recommendation.

{¶ 27} R.C. 2953.08(G) governs appellate review of felony sentences. *State v. Workman*, 10th Dist. No. 21AP-607, 2024-Ohio-167, ¶ 45; *State v. Farmer-Reese*, 10th Dist. No. 22AP-613, 2023-Ohio-4772, ¶ 18. That statute explicitly states "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). Consequently, appellate courts may not apply the abuse of discretion standard in sentencing challenges. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 10; *State v. D.H.*, 10th Dist. No. 18AP-608, 2019-Ohio-1017, ¶ 21. Because we may not review or reverse a felony sentence for an abuse of discretion, we overrule Newell's second assignment of error.

{¶ 28} By his third assignment of error, Newell argues the trial court erred in imposing an indefinite sentence under the Reagan Tokes Law because that law is unconstitutional. We disagree.

{¶ 29} Effective March 2019, the Reagan Tokes Law provides that first- and second-degree felonies not already carrying a life sentence are subject to an indefinite sentencing scheme consisting of a minimum and maximum prison term. R.C. 2929.14(A)(1)(a) and (A)(2)(a). The Reagan Tokes Law creates a presumption that an offender will be released

from incarceration after serving the minimum prison term but gives the Ohio Department of Rehabilitation and Correction ("ODRC") the opportunity to rebut that presumption, in which case the ODRC may maintain the offender's incarceration up to the maximum prison term. R.C. 2967.271(B), (C), and (D).

{¶ 30} During the sentencing hearing, the trial court determined the Reagan Tokes Law applied to the burglary offense. As a result, the trial court sentenced Newell to an indefinite sentence of a minimum of six years and a maximum of nine years in prison. Newell now argues on appeal the trial court erred in applying the indefinite sentencing structure of the Reagan Tokes Law because that law is unconstitutional. More specifically, Newell argues that R.C. 2967.271, which allows ODRC to incarcerate an offender beyond the minimum prison term imposed by a trial court, violates the separation-of-powers doctrine, the right to a jury trial, and procedural due process.

{¶ 31} While this appeal was pending, the Supreme Court issued a decision finding the Reagan Tokes Law to be facially constitutional. *State v. Hacker*, ___ Ohio St.3d ___, 2023-Ohio-2535, ¶ 41 (holding the Reagan Tokes Law does not violate the doctrine of separation of powers, the right to a jury trial, or procedural due process). Following the Supreme Court's decision in *Hacker*, we reject Newell's constitutional challenge to the indefinite sentencing structure of the Reagan Tokes Law. Accordingly, we overrule Newell's third assignment of error.

## IV. Conclusion

{¶ 32} For the foregoing reasons, we overrule Newell's three assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and BOGGS, JJ., concur.

_____