[Cite as *State v. Combs*, 2025-Ohio-1569.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30286 |
| | : | |
| v. | : | Trial Court Case No. 2024 CR 00651 |
| | : | |
| ROBERT BILLY COMBS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on May 2, 2025

· · · · · · · · · · ·

ROBERT ALAN BRENNER, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

· · · · · · · · · · · ·

HANSEMAN, J.

{¶ 1} Appellant Robert Billy Combs appeals from his conviction in the Montgomery County Court of Common Pleas after he entered a plea agreement with the State and pled guilty to one count of strangulation of a family or household member and nine counts of intimidation of a crime victim or witness. In support of his appeal, Combs claims that the State violated the plea agreement during sentencing when it requested that the trial

court impose the maximum possible prison term instead of the parties' negotiated agreed sentence of community control sanctions. Combs asserts that this alleged violation of the plea agreement warrants reversing his conviction and remanding the matter to the trial court for resentencing in accordance with the plea agreement. For the reasons outlined below, we disagree with Combs's argument, and we affirm the judgment of the trial court.

### Facts and Course of Proceedings

{¶ 2} On March 11, 2024, a Montgomery County grand jury returned an indictment charging Combs with one third-degree-felony count of domestic violence and one third-degree-felony count of strangulation of a family or household member. The charges stemmed from allegations that, on the morning of February 29, 2024, Combs became angry with his girlfriend ("the victim") while they were having breakfast, struck the victim on her face and sides with a closed fist, and then choked her. The victim also reported that Combs destroyed her cell phone and threatened to kill her if she tried to contact the police.

{¶ 3} On March 14, 2024, Combs appeared at his arraignment hearing and stood mute; a plea of not guilty to the indicted charges was entered on his behalf. Thereafter, the trial court set bail of a surety bond in the amount of $50,000 and a conditional own recognizance bond that required Combs to be on electronic monitoring and to have "no contact with the alleged victim." Entry and Order Setting Bail (Mar. 18, 2024). The trial court's entry and order setting bail provided that: "A failure to comply with the terms and conditions of this bond may result in penalties that include, but are not limited to . . .

rejection or modification by the court of negotiated plea agreements." *Id.*

{¶ 4} Combs never posted bond and remained in jail. On May 16, 2024, the State filed a motion to revoke Combs's bond and to restrict his communications in jail on grounds that he had violated the condition requiring him to have no contact with the victim. Specifically, the State alleged that Combs had sent the victim multiple electronic messages and letters via U.S. mail while he was in jail. As a result of this conduct, the State requested that the trial court hold Combs without bond and order the Montgomery County Sheriff "to restrict Combs's communication via telephone, video, electronic messaging, or paper mail to his counsel only."

{¶ 5} On June 13, 2024, the trial court granted the portion of the State's motion that requested restricting Combs's communications while in jail. Approximately two months later, on August 6, 2024, a Montgomery County grand jury returned a "B" indictment in Combs's case that charged him with nine first-degree-misdemeanor counts of intimidation of a crime victim or witness. The nine additional counts stemmed from allegations that Combs had attempted to intimidate or hinder the victim from cooperating with the investigation and prosecution of his case. Combs pled not guilty to the charges in the "B" indictment, and the trial court thereafter set bail of a surety bond in the amount of $9,000 and a conditional own recognizance bond that once again required Combs to be on electronic monitoring and to have "no contact with the alleged victim." Entry and Order Setting Bail (Aug. 16, 2024). Combs never posted bond and remained in jail for the duration of his case.

{¶ 6} On September 5, 2024, the parties appeared before the trial court and

advised that they had reached a plea agreement. As stated on the record, the plea agreement required Combs to plead guilty to the third-degree-felony count of strangulation and the nine first-degree-misdemeanor counts of intimidation of a crime victim or witness. In exchange, the State agreed to dismiss the single count of domestic violence and to join in an agreed sentence of community control sanctions with treatment at either the MonDay or STAR program.

{¶ 7} After the parties advised the trial court of the plea agreement, the trial court conducted a plea colloquy during which it advised Combs, among other things, that he could receive a sentence of up to 36 months in prison for the single count of strangulation and up to 180 days in jail for each of the nine misdemeanor counts of intimidation of a crime victim or witness. The trial court clarified, however, that any jail term imposed for the nine misdemeanors would be served concurrently to the prison term imposed for strangulation. Combs thereafter indicated that he understood the maximum possible sentence.

{¶ 8} Once the trial court completed its plea colloquy, Combs pled guilty to the single count of strangulation and the nine counts of intimidation of a crime victim or witness. The trial court accepted Combs's guilty pleas, ordered a presentence investigation, and scheduled the matter for a sentencing hearing. During his presentence investigation, Combs admitted to the examiner that he knew he was not supposed to have contact with the victim.

{¶ 9} Three days prior to Combs's sentencing hearing, the State filed a sentencing memorandum advising the trial court that Combs had breached the parties' plea

agreement. Specifically, the State claimed that, after the plea hearing, Combs had breached the plea agreement by asking an "intermediary" to contact the victim on his behalf in violation of the court's no contact order. The State argued that Combs's compliance with the trial court's no contact order was an implicit condition of the plea agreement and that Combs therefore had breached the plea agreement by violating the no contact order. As a result of the breach, the State argued that it was no longer bound to the agreed sentence of community control sanctions in the plea agreement. Therefore, instead of agreeing to community control sanctions, the State requested that the trial court impose the maximum possible sentence of 36 months in prison.

{¶ 10} At the sentencing hearing, Combs's trial counsel referenced the parties' plea agreement and stated the following regarding the State's sentencing memorandum:

[I]t has come to my attention after reading the State's sentencing memorandum that there has been a technical violation of contact as it relates to Mr. Combs. He wrote to his sister to find out how the complaining witness, someone that Mr. Combs was in a relationship with for a long time, was doing.

There was nothing threatening about that conversation. . . . He was asking the sister to find out how [the victim] was doing because Mr. Combs, regrettably, whether it makes sense to people in this room or not, cares about her.

Mr. Combs believed, incorrectly, that because the plea had gone through that [the victim] was not a witness against him anymore. . . . He

didn't reach out to her directly, which he had the ability to do, which we all know because he did it before. But he didn't do it. He reached out to his sister. Again, there was nothing threatening in that message.

. . .

Again, I understand that technically that is a violation of this Court's no contact order. If, in fact, Your Honor, you believe that would facilitate more of a punishment or not going along with the agreement between the parties, then I would ask that maybe just a small local sentence or a punishment be added to what the Court wants to do.

Mr. Combs needs treatment. He wants treatment. I just explained to him now the violation. He understands why that's a violation. It didn't have any ill will. But we're asking the Court to please follow the agreement that we had in this case.

Sentencing Tr., p. 29-30.

{¶ 11} After Combs's trial counsel conceded the "technical violation" of the plea agreement, the State reiterated its request for the trial court to find that Combs had breached the plea agreement and to impose the maximum possible sentence of 36 months in prison. The State argued that Combs's "violation of these orders not only shows that he's still going to try and have contact with this victim, but it also shows that he's not going to comply with this Court's orders as it relates to community control." *Id.*

{¶ 12} After listening to the parties' statements and after discussing Combs's criminal history, which included multiple prior offenses of violence against the same

victim, the trial court stated that it "cannot ignore that [Combs] pretty much breached the no contact order that was put in place not just from the time that the parties made their agreement [but] from . . . the beginning of the case." *Id.* at 33. The trial court also stated that it did not believe that Combs did not know that he was prohibited from contacting the victim.

{¶ 13} Following these statements, and after considering the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, the trial court sentenced Combs to 30 months in prison for strangulation and 180 days in jail for each of the nine counts of intimidation of a crime victim or witness. The trial court ordered the 180-day jail terms to be served concurrently to one another and concurrently to the 30-month prison term, for an aggregate term of 30 months in prison.

{¶ 14} Combs now appeals, raising a single assignment of error for review.

## Assignment of Error

{¶ 15} Under his assignment of error, Combs argues that his act of writing his sister to ask how the victim was doing did not violate the terms of the parties' plea agreement. According to Combs, it was the State, not him, who violated the plea agreement. Combs claims that the State violated the plea agreement when it asked the trial court to impose the maximum possible prison sentence as opposed to the agreed sentence of community control sanctions. As a result, Combs claims that his conviction should be reversed with respect to the sentence imposed and that the matter should be remanded to the trial court

for resentencing in accordance with the plea agreement. We disagree.

{¶ 16} "A plea agreement is a contract between the prosecution and a criminal defendant, and is governed by principles of contract law." *State v. Gilroy*, 2011-Ohio-4163, ¶ 22 (2d Dist.), citing *State v. Adkins*, 2005-Ohio-2577, ¶ 7 (4th Dist.). "[W]hen a plea rests on a promise made by the prosecutor, that promise must be fulfilled." *State v. Soto*, 2019-Ohio-4430, ¶ 19, citing *Santobello v. New York*, 404 U.S. 257, 262 (1971) and *State v. Bethel*, 2006-Ohio-4853, ¶ 50. "However, a defendant's breach of a plea agreement relieves the prosecutor of his or her obligation(s) under the agreement, such as recommending a particular sentence." *State v. Anderson*, 2020-Ohio-6912, ¶ 10 (4th Dist.); *Adkins* at ¶ 4, 7.

{¶ 17} "Whether there has been a breach of a plea agreement is a determination that initially rests within the sound discretion of the trial court, and is reviewed on appeal under an abuse of discretion standard." (Citations omitted.) *State v. Flowers*, 2009-Ohio-1945, ¶ 6 (2d Dist.). However, because Combs conceded at the sentencing hearing that he had committed a "technical violation" of the plea agreement, and because he never raised the issue of whether the State had breached the plea agreement when it asked the trial court to impose the maximum prison term, he has waived all but plain error on that issue. *See State v. Wagner*, 2024-Ohio-5394, ¶ 12-14 (8th Dist.).

{¶ 18} We notice plain error " ' "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." ' " (Emphasis deleted.) *State v. Rogers*, 2015-Ohio-2459, ¶ 23, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the

syllabus. To prevail under a plain error analysis, it must be shown that "but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 2014-Ohio-4034, ¶ 16, citing *State v. Davis*, 2010-Ohio-5706, ¶ 29.

{¶ 19} As previously discussed, the plea agreement in this case required Combs to plead guilty to one count of strangulation and nine counts of intimidation of a crime victim or witness. In exchange, the State was required to dismiss the domestic violence count and to join in an agreed sentence of community control sanctions with treatment at either the MonDay or STAR program. Although the plea agreement did not expressly require Combs to have no contact with the victim, the State alleged that Combs had breached the plea agreement by violating the no contact order that was a condition of his bond.

{¶ 20} Multiple courts have recognized that even if a condition of bond is "not an express condition of the parties' plea agreement, it is well settled that 'when a defendant enters a guilty plea in exchange for the prosecutor's promise to recommend a certain sentence, there is an implied condition that the circumstances surrounding the bargain will remain substantially the same; a substantial change in the circumstances is sufficient to relieve the state of its obligation.' " *State v. Dowler*, 2015-Ohio-5027, ¶ 26 (4th Dist.), quoting *State v. Bembry*, 2014-Ohio-5498, ¶ 22 (7th Dist.); *accord State v. Hill*, 2013-Ohio-674, ¶ 20 (10th Dist.), citing *State v. Pascall*, 49 Ohio App.2d 18, 20 (9th Dist.1972); *State v. Cox*, 1993 WL 548082, *1 (11th Dist. Dec. 10, 1993). *See also State v. Calderon*, 1995 WL 704188, *7 (2d Dist. Nov. 29, 1995) ("one is not bound by a plea agreement if

there is a material change that occurs between the agreement and sentencing"), citing *Pascall* at 20. In other words, it is well established that violating the conditions of bond while awaiting sentencing constitutes a breach of a plea agreement and relieves the State of its obligation to recommend the sentence described in the agreement. *State v. Gutierres*, 2024-Ohio-2767, ¶ 33-34 (7th Dist.); *Anderson*, 2020-Ohio-6912, at ¶ 10 (4th Dist.), citing *State v. Billiter*, 2018-Ohio-733, ¶ 26 (4th Dist.); *Hill* at ¶ 22.

{¶ 21} Combs, however, never posted bond and was never released from jail. Because Combs did not post bond, the no contact order, a condition of his bond, "had no legal effect while [Combs] remained in custody." *City of Cleveland v. Dixon*, 2020-Ohio-2728, ¶ 28 (8th Dist.). In other words, Combs, who was never released on bond, "cannot have violated a court order that was intended to regulate his conduct when released on bond." *Id.*

{¶ 22} Although the trial court did not issue a no contact order that was independent of Combs's bond, it did grant the State's May 16, 2024 request "to restrict Combs's communication via telephone, video, electronic messaging, or paper mail to his counsel only." By issuing that order, the trial court prohibited Combs from using the aforementioned forms of communication with anyone other than his counsel. The obvious import of the order was to keep Combs from contacting the victim.

{¶ 23} At his sentencing hearing, Combs admitted that, after he entered his guilty plea, he wrote his sister a letter asking her to see how the victim was doing. This was a clear violation of the court's order restricting his jail communications. In its motion to restrict Combs's jail communications, the State clearly had expressed its concerns about

Combs's continually contacting the victim while in jail. The record also establishes that Combs understood that he was not supposed to have any contact with the victim. Despite that knowledge, and despite the trial court's issuance of an order for Combs not to communicate with anyone other than his counsel, Combs violated the order and attempted to make contact with the victim through his sister.

{¶ 24} " 'Additional misconduct during incarceration represents a substantial change in circumstances from when the plea agreement was executed.' " *State v. Santiago*, 2023-Ohio-561, ¶ 17 (3d Dist.), quoting *Dowler,* 2015-Ohio-5027, at ¶ 26 (4th Dist.). Here, Combs engaged in additional misconduct while awaiting sentencing when he violated the court's order restricting his jail communications. Under the specific circumstances of this case, we find that this additional misconduct amounted to a substantial change in circumstances that was sufficient to relieve the State of its obligations under the plea agreement. Accordingly, we find no obvious error with regard to the State's abandonment of the plea agreement and request for the maximum possible prison term as opposed to the agreed sentence of community control sanctions.

{¶ 25} Even if the State had breached the plea agreement as suggested by Combs, Combs cannot demonstrate that the outcome of his case would have been any different absent the alleged breach, as Combs is not arguing for the withdrawal of his guilty plea, but only that he be resentenced in accordance with the plea agreement. A trial court, however, is free to reject plea agreements and is not bound to accept an agreed sentence. *State v. Greene*, 2024-Ohio-363, ¶ 37 (2d Dist.) ("courts 'may reject plea agreements and . . . are not bound by a jointly recommended sentence.' "), quoting *State*

*v. Underwood*, 2010-Ohio-1, ¶ 28; *State v. Harrison,* 2020-Ohio-4154, ¶ 19 (2d Dist.) ("[u]nless the court involves itself in plea negotiations or agrees to the terms of the agreement, the trial court is not bound by the plea agreement, and the court may determine the appropriate sentence for the charges to which the defendant has pled guilty").

**{¶ 26}** Under the circumstances of this case, we cannot say that, had the State followed the plea agreement, the trial court would have clearly accepted the parties' agreed sentence and imposed community control sanctions as opposed to a 30-month prison term. We reach this conclusion primarily because of Combs's criminal history, which was reviewed by the trial court during the sentencing hearing. When discussing Combs's criminal record, the trial court mentioned that Combs had been convicted of violent felonies in three other cases, i.e., aggravated robbery in 2008, aggravated assault (serious physical harm) in 2020, and abduction (restrain) and aggravated assault (serious physical harm) in 2022. Significantly, the trial court noted that the aggravated assault and abduction offenses were all committed against the victim in this case. The aggravated assault from 2020 arose from Combs's beating the victim with a machete and refusing to allow the victim to leave their residence. The abduction and aggravated assault offenses from 2022 arose from Combs's beating the victim multiple times with sticks and a baseball bat and using a piece of rope to tie the victim's leg to him so as to prevent her from leaving their residence. In addition to those offenses, Combs was convicted of bringing alcohol into a prison in 2017 and of several misdemeanor offenses over the past 20 years. Combs's misdemeanor offenses include assault, disorderly conduct, theft, obstructing

official business, falsification, and drug abuse.

{¶ 27} When considering Combs's extensive criminal record, particularly the repeated offenses of violence against the same victim, his multiple attempts to contact the victim while in jail, and his violation of the court order restricting his jail communications, we cannot say that the trial court would have sentenced Combs any differently had the State not abandoned the parties' plea agreement. In other words, even if the agreed sentence had been presented to the trial court, given his criminal history and inability to follow court orders, Combs cannot establish that the trial court would have imposed the agreed sentence of community control sanctions as opposed to a 30-month prison term. Therefore, this case does not present the kind of exceptional circumstances or manifest miscarriage of justice that warrants finding plain error.

{¶ 28} Because the trial court did not commit any error, let alone plain error, with regard to the State's abandoning the plea agreement and requesting the maximum possible prison term, Combs's assignment of error is overruled.

## Conclusion

{¶ 29} Having overruled Combs's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.