[Cite as *State v. Kilgore*, 2026-Ohio-1891.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30660 |
| Appellant | : | |
| | : | Trial Court Case No. 2025 CR 00768 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| CHELSEA KILGORE | : | Court) |
| | : | |
| Appellee | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 22, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

CHRISTOPHER B. EPLEY, JUDGE

LEWIS, P.J., and HANSEMAN, J., concur.

ANDREW T. FRENCH, Attorney for Appellant
CHRISTOPHER BAZELEY, Attorney for Appellee

EPLEY, J.

{¶ 1} Pursuant to R.C. 2945.67(A) and Crim.R. 12(K), the State of Ohio appeals from Chelsea Kilgore's conviction in the Montgomery County Court of Common Pleas for aggravated vehicular assault and operating a vehicle under the influence of drugs or alcohol (OVI). The State claims that the trial court erred in imposing a prison term outside the range to which the parties had agreed and which the court had indicated at the plea hearing it would impose. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} On October 23, 2024, Kilgore was driving her Nissan at approximately 40-45 mph on Brandt Pike, a two-lane road, when she rear-ended the third vehicle in a line of vehicles stopped at the intersection with Schwinn Drive. Apparently, the first car was waiting to turn left, and the third car had just come to stop when the collision occurred. The impact pushed the third car into the left side of the second vehicle and then into oncoming traffic, causing it to strike two motorcyclists. One of the motorcyclists, K.F., suffered extensive physical injuries, including injuries that necessitated the amputation of a portion of his left leg. Kilgore was driving under suspension, and her vehicle smelled of marijuana. She admitted to a responding police officer that she had smoked a blunt that morning. Testing of her blood revealed the presence of THC metabolite and fentanyl.

{¶ 3} On April 9, 2025, Kilgore was indicted on one count of aggravated vehicular assault (suspension) in violation of R.C. 2903.08(A)(1), a felony of the second degree, and

2

three counts of OVI, all misdemeanors of the first degree. Kilgore pleaded not guilty and moved to suppress the results of the blood test.

{¶ 4} On the morning of the scheduled suppression hearing, the parties informed the court that they had reached a plea agreement. Kilgore would plead guilty to the lesser-included offense of aggravated vehicular assault, a third-degree felony, and to OVI (under the influence), a first-degree misdemeanor; in exchange, the State would dismiss the remaining two OVI charges. The parties further agreed to a sentencing range of two to five years in prison for the felony and to Kilgore's payment of restitution to K.F. The court indicated that it would order a presentence investigation ("PSI") with one focus being the amount of restitution.

{¶ 5} After confirming the terms of the plea with counsel for both sides, the trial court conducted a Crim.R. 11 hearing. Kilgore initially agreed that she had heard the court's conversation with counsel and "had the same understanding that we all have with respect to the counts to which you're going to plead and the agreed sentencing range from two to five years." Tr. 4-5. Kilgore told the court that she was on intervention in lieu of conviction (ILC) in two other Montgomery County cases, and the court notified her that her plea would justify revoking her ILC. It indicated that the likely outcome was that the ILC would be converted to community control and then terminated. Kilgore expressed her understanding. With the approval of defense counsel, the court did not discuss the possibility of community control sanctions due to "the plea agreement and what lies before us, which is the PSI, and then my imposing a prison term within the agreed range of two to five years." Tr. 9-10. Although R.C. 2903.08(D)(1) requires a trial court to impose a mandatory prison term on an offender who pleads guilty to a violation of R.C. 2903.08(A)(1), there was no discussion of the mandatory nature of the prison sentence.

3

**{¶ 6}** At the end of the colloquy, Kilgore entered guilty pleas to aggravated vehicular assault and OVI, as agreed, and she signed plea forms to that effect. The plea form for aggravated vehicular assault stated that she could receive "***Prison term(s)***, of 12, 18, 24, 30, 36, 42, 48, 54, or 60 months (plus __ years); plus the prison term(s) for ____ is/are mandatory and cannot be reduced by judicial release, earned credit, or furlough." The second page of the form included a handwritten statement that the plea was based on an "[a]greed prison range of 2-5 years."

**{¶ 7}** The court found that the pleas were made knowingly, intelligently, and voluntarily. Kilgore formally withdrew her motion to suppress. The court ordered a PSI and set disposition for August 20, 2025. Before that date, both parties filed sentencing memoranda: the State requested a maximum prison term of five years, and defense counsel sought a two-year term, the minimum under the agreement.

**{¶ 8}** The record does not contain a transcript of the August 20, 2025 disposition hearing, but it appears from the trial court's later recapitulation that defense counsel had expressed his belief that only the first year of Kilgore's prison term was mandatory. Due to confusion on this issue, sentencing did not proceed.

**{¶ 9}** The matter reconvened on August 27, 2025, at which time defense counsel told the court in a sidebar discussion that, "notwithstanding the idea that you were to sentence her identically to what you were going to do last week, she would like to withdraw her plea based on all this confusion" and have new counsel. The court responded that "if she wants to withdraw her plea, I'm confident I'm going to grant that if she wants to do that. Because there's no doubt she didn't make a knowing, intelligent, voluntary plea based on any reasonable consideration of various factors that I'm about to discuss." The court then discussed defense counsel's misunderstanding of the mandatory sentence, the ambiguous

4

information about the mandatory sentence on the plea form, the court's lack of discussion of the mandatory sentence at the plea hearing, and the fact that Kilgore was in "harm's way" on the two ILC cases.

{¶ 10} The trial court then told the parties of its planned resolution of the matter. It indicated that it would impose one year for the aggravated vehicular assault, which would be a mandatory sentence. It would also revoke Kilgore's ILC in her two other cases—Montgomery C.P. No. 2024 CR 268 and Montgomery C.P. No. 2024 CR 1727—and impose one year in prison in one case and two six-month sentences in the other, with the sentences in all three cases to be served consecutively. Kilgore would thus receive an aggregate of three years in prison with one year mandatory. The court did not give the prosecutor an opportunity to speak, but it noted the State's objection for the record. The trial court gave defense counsel an opportunity to consult with Kilgore about whether she wanted to stand on her plea, knowing that she would receive the sentence the judge had just articulated, or instead withdraw her plea and get new counsel. After a recess, defense counsel asked for a continuance, which the trial court granted.

{¶ 11} The parties appeared again on September 24, 2025. The court began with a sidebar discussion during which it reiterated what had previously occurred and articulated the sentence it planned to impose if Kilgore stood by her plea. This time, the court described an aggregate four-year sentence: a mandatory one year for the aggravated vehicular assault and one year for each of the three charges in the ILC cases. When defense counsel raised the discrepancy, the court indicated that it would impose the three-year aggregate sentence that it had previously proposed. The court again noted that it was proceeding over the State's objection and that the State did not believe the proposed sentence was sufficiently severe under the circumstances.

5

{¶ 12} After the sidebar concluded, the trial court informed Kilgore of the sentences it planned to impose in her three cases. After receiving this information, Kilgore stated that she would stand by her earlier guilty pleas to aggravated vehicular assault and OVI. The court then proceeded to sentencing, hearing first from K.F., the victim. When asked if the State wanted to present anything else, the prosecutor responded, "Your Honor, the State's objection has been noted for the record. Victim has had an opportunity to make a statement." Defense counsel and Kilgore declined to speak on Kilgore's behalf. The trial court revoked Kilgore's ILC and imposed its previously announced sentences on the three cases.

{¶ 13} The State appeals from the trial court's judgment in Case No. 2025 CR 768, raising one assignment of error related to her sentence for aggravated vehicular assault. The State does not raise any challenge to Kilgore's OVI conviction. Accordingly, her conviction for OVI is summarily affirmed. We further note that, although the trial court fashioned a "package" prison sentence with the ILC cases, this appeal has no effect on Kilgore's convictions in the ILC cases.

## II. Review of Kilgore's Prison Sentence

{¶ 14} The State's assignment of error states: "The trial court agreed that it would follow the terms of the plea agreement reached between the State and Kilgore, which included a prison sentence of two to five years for Kilgore's plea and conviction of aggravated vehicular assault. By imposing a prison sentence of only twelve months for that offense, the trial court breached the terms of the plea agreement. The sentence, therefore, is void and must be vacated."

{¶ 15} Kilgore responds that the State's argument must fail for multiple reasons. Kilgore first maintains that the trial court never agreed to impose a sentence of two to five years. Second, she asserts that there was no valid meeting of the minds on a key term of

6

the plea agreement (the mandatory nature of the prison term), so there was no valid agreement to enforce. Third, Kilgore contends that the State invited the error related to the mandatory sentence by preparing an ambiguous plea form. Fourth, she maintains that the trial court lawfully amended the plea agreement based on the changing situation before it. Fifth, Kilgore argues that the State's contract concerns do not trump her constitutional rights.

{¶ 16} We address the parties' arguments in a manner that facilitates our analysis.

**A. Applicable Law**

{¶ 17} A plea agreement constitutes a contract between the State and a criminal defendant and is subject to the law of contracts. *E.g., State v. Combs*, 2025-Ohio-1569, ¶ 16 (2d Dist.). In most cases, a plea agreement is not binding on the court, and the decision of whether to accept it rests with the trial judge. *State v. Yount*, 2024-Ohio-1500, ¶ 17 (2d Dist.).

{¶ 18} "Unless the court involves itself in the plea negotiations or agrees to the terms of the agreement, the trial court is not bound by the plea agreement, and the court may determine the appropriate sentence for the charges to which the defendant has pled guilty or no contest." *State v. Sage*, 2013-Ohio-3048, ¶ 23 (2d Dist.). Where the trial court has not promised to impose the sentence that the parties have agreed upon, the court does not have to provide the defendant with an opportunity to withdraw his or her plea before imposing a sentence that is harsher than the agreed-upon sentence. *State v. Fyffe*, 2018-Ohio-112, ¶ 25 (2d Dist.), distinguishing *State v. Willey*, 2002-Ohio-2849 (4th Dist.).

{¶ 19} The Ohio Supreme Court has "strongly discouraged" a trial judge's active participation in plea negotiations. *In re Disqualification of Forchione*, 2018-Ohio-5437, ¶ 9, quoting *State v. Byrd*, 63 Ohio St.2d 288, 293 (1980). However, when a plea agreement includes an agreed or recommended sentence or sentencing range, the trial court may indicate at the plea hearing that it will abide by the parties' agreement and impose the

7

agreed-upon or recommended sentence. *See id.*, citing American Bar Association, *ABA Standards for Criminal Justice: Pleas of Guilty*, § 14-3.3(d) (3d Ed. 1999) ("A judge should not ordinarily participate in plea negotiation discussions among the parties. . . . [A] judge may be presented with a proposed plea agreement negotiated by the parties and may indicate whether the court would accept the terms as proposed and if relevant, indicate what sentence would be imposed").

{¶ 20} We have repeatedly stated that "when the trial court promises a certain sentence at a plea hearing, that promise 'becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary.'" *State v. Harrison*, 2020-Ohio-4154, ¶ 22 (2d Dist.), quoting *State v. Bonnell*, 2002-Ohio-5882, ¶ 18 (12th Dist.); *see, e.g.*, *State v. Anderson*, 2014-Ohio-4699, ¶ 9 (2d Dist.).

{¶ 21} We have further recognized that conditions may change to cause the trial court to conclude that the agreed-upon sentence, which it had promised to impose, is no longer appropriate. *State v. Gay*, 2021-Ohio-970, ¶ 8 (2d Dist.), citing *State v. Layman*, 2008-Ohio-759 (2d Dist.). When that occurs, the trial court is not required to impose the agreed-upon sentence if it first informs the defendant of its intention to deviate from the agreed sentence and provides the defendant an opportunity to withdraw his or her plea. *Id*. at ¶ 8.

**B. Trial Court's Agreement to Impose a Sentence of Two to Five Years**

{¶ 22} We begin with Kilgore's assertion that the trial court never agreed to impose a prison sentence in the range of two to five years.

{¶ 23} The trial court mentioned the parties' agreed sentence multiple times during the plea hearing. The court first confirmed the terms of the plea agreement—including the agreed sentencing range of two to five years—with counsel. The trial court then asked Kilgore if she had clearly heard that conversation and "had the same understanding that we

8

all have with respect to the courts to which you are going to plea and the agreed sentencing range from two to five years." When discussing the possible sentence for aggravated vehicular assault, the trial court told Kilgore that "by virtue of the plea agreement and what lies before us, which is the PSI, and then my imposing a prison term within the agreed range of two to five years, I don't have any intention of discussing community control." Finally, after Kilgore entered her guilty pleas, the trial court found that Kilgore understood that "she is not being placed on community control, but rather will receive a prison term within the agreed range of two to five years following pre-sentence investigation."

{¶ 24} In her appellate brief, Kilgore acknowledges these statements by the trial court, but she contends that the trial court did not "explicitly promise" that it would impose a sentence between two and five years. She maintains that the court's statements merely indicated what it would probably do. Kilgore emphasizes that the trial court stated that it would impose a sentence after reviewing the PSI, which she interprets as "strongly suggesting that it may deviate from the agreed term."

{¶ 25} We recognized that when informing Kilgore of the potential sentence for aggravated vehicular assault, the court stated that it included a prison term from 12 to 60 months. The trial court later told Kilgore that it was going to obtain a PSI and would seek input from the prosecutor, defense counsel, and her prior to sentencing. However, the trial court expressly told Kilgore during the plea hearing that it would obtain a PSI and then impose a prison sentence between two and five years. The court's findings following the entry of Kilgore's plea further unambiguously indicated that the court would impose a sentence within the agreed-upon range. It is apparent that the trial court intended to use the PSI to assist the court in determining the specific sentence to impose within the agreed range, as well as the amount of restitution. This was not a situation where the court indicated

9

that it "would probably" or "was inclined to" impose a sentence within the agreed range. *Compare State v. Newell*, 2024-Ohio-939 (10th Dist.).

**C. Validity of the Plea/Agreed Sentence**

**{¶ 26}** Kilgore further claims that there was no contract to breach, because there was no meeting of the minds regarding the mandatory nature of the prison sentence. She also asserts that the State drafted the plea agreement and thus invited the error by failing to clearly indicate that the agreed prison sentence was a mandatory sentence.

**{¶ 27}** For a contract to be enforceable, there must be a "meeting of the minds" as to the essential terms of the agreement. *Absolute Resolutions Invests., LLC v. Moran*, 2025-Ohio-2999, ¶ 33 (2d Dist.). This principle applies equally to plea agreements. When the parties to a plea agreement lack a meeting of the minds about an essential element of the agreement, the resulting plea is not made knowingly, intelligently, and voluntarily by the defendant. Consequently, Kilgore's arguments regarding the lack of a meeting of the minds and the State's actions in inviting the misunderstanding relate to the validity of her plea, not the appropriateness of the trial court's sentence.

**{¶ 28}** Kilgore pleaded guilty to aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a). Under R.C. 2903.08(D)(1), the court was required to impose a mandatory prison term for that offense. "When a defendant on whom a mandatory prison sentence must be imposed enters a plea of guilty or no contest, the court must, before accepting the plea, determine the defendant's understanding that the defendant is subject to a mandatory sentence and that the mandatory sentence renders the defendant ineligible for probation or community control sanctions." *State v. Balidbid*, 2012-Ohio-1406, ¶ 10 (2d Dist.); *see* Crim.R. 11(C)(2)(a).

10

{¶ 29} In this case, the trial court failed to notify Kilgore at her plea hearing that she would be subject to a mandatory prison term. The trial court did not address community control (with defense counsel's consent), but it omitted the discussion of community control due to the parties' agreement that Kilgore would receive a prison sentence between two and five years, not because of the mandatory nature of her sentence.

{¶ 30} At the August 27, 2025 hearing, the trial court recognized that there was a misunderstanding by Kilgore and her attorney about the mandatory nature of a prison term for aggravated vehicular assault and that Kilgore's attorney had misinformed Kilgore about how much of the prison term was mandatory. The court noted that Kilgore had not been informed at the plea hearing that her prison term would be mandatory. The court also reviewed the plea form and found that the plea agreement did not clearly inform Kilgore that she would be required to serve a mandatory prison term.

{¶ 31} Because of the confusion about the mandatory nature of the agreed prison sentence, Kilgore requested the opportunity to withdraw her plea at the August 27, 2025 hearing. The trial court remarked that "if she wants to withdraw her plea, I'm confident I'm going to grant that if she wants to do that. Because there's no doubt she didn't make a knowing, intelligent, voluntary plea based on any reasonable consideration of various factors that I'm about to discuss." Tr. 19.

{¶ 32} Once the trial court realized that Kilgore had not been properly advised regarding mandatory sentencing and that her plea had not been made knowingly, intelligently, and voluntarily, the trial court had two options. First, the court could have provided Kilgore with the required notifications regarding mandatory sentencing and then inquired if Kilgore wished to continue under the parties' plea agreement with the understanding that her prison sentence would be mandatory. If Kilgore elected to continue

11

with her plea, the court could have then proceeded to sentencing as the parties had agreed. If Kilgore did not wish to agree to a mandatory sentence within the agreed range, the trial court should have permitted Kilgore to withdraw her plea. Had that occurred, the parties could have attempted to negotiate a new plea agreement or set the matter for trial on the indicted charges.

{¶ 33} On appeal, the State asserts that the trial court breached the plea agreement by imposing a prison sentence of one year, a length outside the agreed range. However, we cannot conclude that the trial court erred in failing to enforce a plea that was not made knowingly, intelligently, and voluntarily. In the absence of Kilgore's agreement to continue with her plea with the understanding that she would receive a mandatory prison term between two and five years, the sentence to which Kilgore and the State had agreed was not enforceable. The State's assignment of error is, therefore, overruled.

{¶ 34} We note that this case does not present a situation in which conditions had changed to cause the court to conclude that the agreed-upon sentence, which the court had promised to impose, was no longer appropriate. *Compare Gay*, 2021-Ohio-970 (2d Dist.); *Layman*, 2008-Ohio-759 (2d Dist.). Foundationally, those cases involved the trial court's deviation from a sentence that it had agreed to impose following a valid plea. Here, it became apparent that Kilgore's plea had not been made knowingly, intelligently, and voluntarily. Additionally, unlike those cases, neither Kilgore nor the State engaged in any conduct between the plea and sentencing hearings to bring the appropriateness of the agreed sentencing range into question. The two circumstances are not analogous.

{¶ 35} Finally, although we are rejecting the State's argument, we are *not* holding that the trial court appropriately resolved this matter. After concluding that Kilgore had not entered a knowing, intelligent, and voluntary plea, the trial court essentially engaged in new

12

plea negotiations with Kilgore to encourage her not to withdraw her plea. The court offered Kilgore a combination of consecutive sentences to resolve this case and her two ILC cases. The court apparently believed that the aggregate sentence was within the spirit of the parties' agreed sentence (2 – 5 years); the trial court sought no input from the parties and recognized that it was proposing its own sentencing deal over the objection of the State. At the September 24, 2025 hearing, the trial court addressed Kilgore directly and outlined the aggregate three-year sentence that it would impose if she "stood on her earlier plea" to aggravated vehicular assault and OVI; Kilgore agreed to stand on her earlier plea.

{¶ 36} Because Kilgore did not agree to continue with her original plea terms with the additional understanding that she would receive a mandatory prison term, the trial court should have granted her motion to withdraw her plea and allowed the *parties* to determine whether a new plea would be entered or she would go to trial.

{¶ 37} The State asserts on appeal that "[t]he sentence–and perhaps Kilgore's plea– must nevertheless be vacated despite the trial court's best intentions." However, its argument and request for relief focus only on the court's failure to impose a prison sentence between two and five years consistent with the terms of the negotiated plea. The State does not challenge the validity of the plea itself. Because we find no error in the trial court's failure to impose a sentence within the range of two to five years in accordance with the parties' negotiated plea agreement, we are compelled to affirm.

### III. Conclusion

{¶ 38} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HANSEMAN, J., concur.

13