[Cite as *State v. Harrison*, 2020-Ohio-4154.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | |
|---|---|
| STATE OF OHIO | : |
| | : |
| Plaintiff-Appellee | : Appellate Case Nos. 28526 & 28528 |
| | : |
| v. | : Trial Court Case Nos. 2019-CR-288 |
| | :                    2019-CR-657 |
| | : |
| MICHAEL HARRISON | : (Criminal Appeal from |
| | :   Common Pleas Court) |
| Defendant-Appellant | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of August, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JAMIE J. RIZZO, Atty. Reg. No. 0099218, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Michael Harrison appeals from his convictions in two Montgomery County cases. In Montgomery C.P. No. 2019-CR-288, Harrison pled guilty to two counts of felonious assault and one count each of improperly discharging a firearm at or into a habitation (with a firearm specification), tampering with evidence, and having a weapon while under disability. In Montgomery C.P. No. 2019-CR-657, Harrison pled guilty to an additional count of felonious assault. The trial court imposed an aggregate sentence of 20 years in prison.

{¶ 2} Harrison appeals from his convictions, claiming that the trial court improperly interjected itself into the plea negotiations, rendering his pleas invalid and not knowing, intelligent, and voluntary. For the following reasons, the trial court's judgments will be affirmed.

## I. Facts and Procedural History

{¶ 3} According to the court's decision on Harrison's motion to suppress, in the early morning hours of Saturday, January 26, 2019, Rudina Oberry drove to a store in her Mercury Milan and began to enter the store, leaving her vehicle unlocked and running. Harrison, who is the father of Oberry's child, also was at the store in his own vehicle.

{¶ 4} Oberry saw two males, later identified as T.S. and R.A.,[1] approach her vehicle. T.S. entered Oberry's Milan and drove away. In response to T.S.'s actions, Harrison began firing his gun at Oberry's vehicle.[2] T.S. was able to flee the area in the

---

[1] The record reflects that T.S. was 17 years old at the time of the offense. R.A.'s age was not mentioned, but the record reflects that he also was a minor.

stolen car. R.A. ran in a separate direction on foot. Oberry jumped into Harrison's vehicle, and they pursued R.A. in Harrison's vehicle as R.A. ran through a field. Harrison caught up to R.A. and ran over R.A. with his (Harrison's) vehicle. Harrison then returned Oberry to the store, where she called 911 to report the incident. Harrison fled the area in his vehicle.

{¶ 5} T.S. parked Oberry's stolen vehicle and walked several blocks to where he found R.A. lying in the street. At approximately 2:33 a.m., police officers were dispatched to R.A.'s location on a report of a pedestrian who had been struck by a vehicle. R.A. had life-threatening injuries, including head injuries, and was transported to the hospital. T.S., who was at the scene, was detained. T.S. later admitted to stealing Oberry's car and identified Harrison as the person who had shot at him. The police located Oberry's vehicle and found bullet holes in it.

{¶ 6} Other officers responded to the store on a report of a vehicle theft and felonious assault. Another officer responded to a home near the store on a report that shots had been fired into the home.

{¶ 7} Officers arrested Harrison later that morning. During questioning at the police station, Harrison apparently admitted to shooting at T.S., but denied knowing that he ran over R.A. The police obtained a search warrant for the home where Harrison was found, Harrison's vehicle, and his cell phone.

{¶ 8} In February 2019, a grand jury indicted Harrison on eleven charges arising

---

[2] Harrison stated during his police interview, in his sentencing memorandum, and at sentencing that he believed that his infant daughter was in Oberry's vehicle, and he was attempting to stop the car to protect her. At sentencing, the trial court told Harrison that it did not find these statements to be credible.

out of the January 26 incident: three counts of felonious assault, each with a repeat violent offender specification and one with a firearm specification; one count of improperly discharging a firearm at or into a habitation, with firearm and repeat violent offender specifications; three counts of tampering with evidence; and four counts of having a weapon while under disability, each with a firearm specification. Case No. 2019-CR-288. Harrison filed a motion to suppress the evidence against him, which the trial court denied.

{¶ 9} On February 7, 2019, Harrison was involved in an altercation at the jail. On March 20, 2019, Harrison was indicted on an additional count of felonious assault related to that incident. Case No. 2019-CR-657. In June, Harrison was re-indicted for felonious assault with a repeated violent offender specification for the jail assault, and the March indictment was dismissed.

{¶ 10} Later that month, Harrison pled guilty to felonious assault in Case No. 2019-CR-657, and the specification was dismissed. The parties told the trial court that they agreed to have the matter "held in abeyance until there's either a universal plea agreement relating to this case [Case No. 2019-CR-657] and the other matter [Case No. 2019-CR-288], which is scheduled for trial in August from this Court." The court stated that it would delay sentencing until August, but that sentencing would proceed in Case No. 2019-CR-657 if there were a continuance in Case No. 2019-CR-288.

{¶ 11} The trial court also made clear to Harrison that any agreement between the parties as to a "universal" sentence would also need to be agreeable to the court. The court indicated, by way of example, that it would not agree to a three-year sentence, but would agree to 20 years. The court asked Harrison if he wanted to proceed with his plea.

Harrison said that he did. The court conducted a plea hearing, accepted Harrison's guilty plea to felonious assault, ordered a presentence investigation, and scheduled sentencing in Case No. 2019-CR-657 for August 26, 2019.

{¶ 12} On August 1, Harrison pled guilty in Case No. 2019-CR-288 to two counts of felonious assault (Counts 1 and 3), improperly discharging a firearm at or into a habitation, with a firearm specification (Count 4), tampering with evidence (Count 6), and having a weapon while under disability (Count 8). The State dismissed the remaining counts and specifications.[3] The parties agreed to a "global mandatory sentencing range of 15-20 years" for both cases. The trial court acknowledged that the parties had agreed to a sentencing range and told Harrison that he was not eligible for community control in light of the agreed sentence, but the court further said that it would determine Harrison's sentence at sentencing.

{¶ 13} The court held a sentencing hearing for both cases on August 20, 2019. In Case No. 2019-CR-288, the court imposed four years for Count 1 (felonious assault – T.S.), eight years for Count 3 (felonious assault – R.A.), two years for Count 4 (improper discharge), three years for the firearm specification to Count 4, 36 months for Count 6 (tampering with evidence), and 36 months for Count 8 (having a weapon while under disability. Counts 6 and 8 were ordered to be served concurrently with each other and with Count 1. Counts 1, 3, and 4 were to be consecutively to each other and to the firearm specification. The court also required Harrison to pay restitution of $3,465 to R.A.'s mother and suspended his driver's license for life.

---

[3] The State reserved the right to bring homicide charges as to Count 3 if R.A. later died from his injuries, and Harrison stated that he understood that his plea to Count 3 did not preclude those additional charges.

{¶ 14} With respect to the felonious assault in Case No. 2019-CR-657, the court imposed three years in prison, to be served consecutively to Counts 1, 3, and 4 and concurrently to Counts 6 and 8 in Case No. 2019-CR-288. The court ordered Harrison to pay court costs in both cases. Harrison's aggregate prison sentence was 20 years.

{¶ 15} Harrison appeals from his convictions.

## II. Court Participation in Plea Negotiations

{¶ 16} In his sole assignment of error, Harrison claims that his pleas were invalid and not made knowingly, intelligently, and voluntarily due to interference and "active efforts" by the trial court during plea negotiations. Harrison does not contend that the trial court failed to comply with Crim.R. 11(C) at either plea hearing.

{¶ 17} "An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If a defendant's plea is not knowing, intelligent, and voluntary, it "has been obtained in violation of due process and is void." *Id*.

{¶ 18} As an initial matter, the State suggests that we should review Harrison's argument under the "manifest injustice" standard in Crim.R. 32.1. We disagree. That standard of review applies to post-sentence motions to withdraw a plea, not to a direct appeal from a conviction.

{¶ 19} Plea agreements are generally made between the State and a defendant. *State v. Sage*, 2d Dist. Montgomery No. 25453, 2013-Ohio-3048, ¶ 23. Unless the court involves itself in the plea negotiations or agrees to the terms of the agreement, the trial

court is not bound by the plea agreement, and the court may determine the appropriate sentence for the charges to which the defendant has pled guilty or no contest. *Id.*, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28.

{¶ 20} The Ohio Supreme Court " 'strongly discourages' a judge's active participation in plea negotiations." *In re Disqualification of Forchione*, 155 Ohio St.3d 1254, 2018-Ohio-5437, 120 N.E.3d 855, ¶ 9, citing *State v. Byrd*, 63 Ohio St.2d 288, 293, 407 N.E.2d 1384 (1980). Nevertheless, the supreme court has held that judicial participation in plea negotiations does not render a plea invalid per se. *Byrd* at 293. Rather, such involvement requires careful scrutiny to determine if "the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial." *State v. Mills*, 2d Dist. Montgomery No. 26619, 2015-Ohio-5385, ¶ 11, quoting *Byrd* at 293-294.

{¶ 21} We have described the circumstances in *Byrd*, stating:

In *Byrd*, a trial judge presiding in a capital case, who probably wanted to avoid having to impose capital punishment, met with the defendant without his lawyer present and urged him to enter a guilty plea. *Id.* at 289-290. The judge told Byrd that evidence which would come out at trial would determine whether "you go to the electric chair." *Id.* The judge also urged members of Byrd's family, and a deputy sheriff who was a family friend, to prevail on Byrd to enter a guilty plea. When Byrd then entered a guilty plea his trial counsel was not present, though counsel's law partner was there. *Id.* at 290. "*Byrd* stands for the proposition that a plea of guilty or no contest

will be presumed to be coerced if the trial judge takes a partisan position in support of the plea." *State v. Chenoweth*, 2d Dist. Montgomery No. 15846, 1997 WL 630018, *2 (Sept. 19, 1997).

*Mills* at ¶ 12.

**{¶ 22}** Claims of judicial involvement in plea negotiations often arise in the context of a statement by the trial court, prior to sentencing, that it would impose a particular sentence. We have repeatedly stated that, when the trial court promises a certain sentence at a plea hearing, that promise "becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary." *E.g., State v. Anderson*, 2d Dist. Montgomery No. 26056, 2014-Ohio-4699, ¶ 9; *State v. Gilroy*, 195 Ohio App.3d 173, 2011-Ohio-4163, 959 N.E.2d 19, ¶ 22 (2d Dist.).

**{¶ 23}** However, a trial court generally does not improperly participate in plea negotiations as to sentencing when it does not promise a particular sentence or otherwise encourage the defendant to enter a plea in order to receive a more lenient sentence. *See, e.g., State v. Swaney*, 2d Dist. Montgomery No. 28357, 2020-Ohio-210, ¶ 19 (the court did not improperly induce defendant's plea when it indicated that it was "looking at community control" but that any failure to comply with the conditions of the own-recognizance bond would negatively affect defendant's ultimate sentence); *State v. Chavez*, 2d Dist. Montgomery No., 22892, 2009-Ohio-3758, ¶ 54 (trial court did not take a partisan position in support of the plea or pressure defendant to accept a plea when "the trial court's participation was in the nature of clarifying [defendant's] options").

### III. Validity of Harrison's Pleas

**{¶ 24}** Harrison first pled in Case No. 2019-CR-657, the case alleging felonious

assault from the jail altercation. Prior to entering his plea, the parties and the court had the following exchange:

[DEFENSE COUNSEL]: Your Honor, we're here to enter a plea to the charge of felonious assault. The RVO spec will be dismissed, and in addition, Your Honor, there's an agreement between the State and the Defense that sentencing on this matter will be held in abeyance until there's either a universal plea agreement relating to this case and the other matter, which is scheduled for trial in August from this Court.

THE COURT: I'm -- I can only agree to that provided it goes forward in August. If it doesn't forward in August, if there's some reason the Defendant requests a continuance and that happens to be granted, then the sentencing in this case will go forward.

[DEFENSE COUNSEL]: Your Honor, I have no reason to believe that the Defense would request a continuance.

THE COURT: Right, but I'm just saying, if there's any request –

[DEFENSE COUNSEL]: Right.

THE COURT: This one will only be held open until the trial date in the other case.

[DEFENSE COUNSEL]: Okay.

THE COURT: Otherwise, if there – if something happens, this one's going to go forward. You understand that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. And it's my understanding – actually, the bailiff

indicated this to me previously – that if the matter did plea, that the – there is no agreement, correct?

[PROSECUTOR]: There – if the – if we don't do a global resolution, then there would be no agreement on this case. If we reach a global, obviously, this case would be included in that global resolution.

THE COURT: I've – I mean, I've made my feelings very clear to everybody. I want everybody to know that, that I've made my concerns really clear.

[PROSECUTOR]: Well, I –

THE COURT: So –

[PROSECUTOR]: Just to make the record clear, the current offer from the State on the global resolution stands at 20 years.

[DEFENSE COUNSEL]: Your Honor, the difficulty in getting a global resolution at this stage is that [another assistant prosecutor] has been gone and she is the prosecutor in the other case, and so until we are able to enter into a meaningful conversation with her, this seemed like the best way to resolve this matter at this stage.

THE COURT: Right. And I also want everybody to understand that I expect to have any proposal run past me because given the circumstances, the State and the Defendant can agree, but I may not. So I just want everybody to be clear about that. This is going to have to be something that, obviously, I agree with also in terms of any sentencing agreement.

So you understand that, sir? It's ultimately my decision. Do you understand that?

THE DEFENDANT: Not completely.   Like, what do you mean?

THE COURT: Your lawyer and the prosecutor can't agree to something that I'm bound by.   All right.   I have to agree to it also and if I don't agree – if they offered you three years, I'd tell you right now, I am not agreeing to that.

THE DEFENDANT: Yes, ma'am. I understand.

THE COURT: I'm the one who said I can do 20.   And – because if [sic] your record, of the really serious nature of both of these cases, so as long as you understand your attorney and the prosecutor may talk about something, but I am not bound by that unless I agree to be bound by that.   You understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Do you still want to enter a plea in this case?

THE DEFENDANT: Yes.

\* \* \*

{¶ 25} After a complete Crim.R. 11 colloquy, Harrison pled guilty to the felonious assault in Case No. 2019-CR-657.

{¶ 26} Harrison entered his guilty pleas in Case No. 2019-CR-288 on August 1. The court initially detailed its understanding of the plea as to the counts to which Harrison would be pleading guilty and the counts and specifications that the State would be dismissing.   The prosecutor, defense counsel, and Harrison all expressed their agreement.   Before proceeding with the Crim.R. 11 colloquy, the court told Harrison:

All right, sir, now I want to remind you of a couple of things.   I'm going to be indicating to you what the potential penalty is for all of these pleas are

[sic], that includes fine, prison sentences, et cetera. And then I'm going to remind you that of the other case which is 19 CR 657. So I'm going to tell you at one point, the total possible prison sentence for all of this, including the other case, is 41 years. * * * Then I will discuss the agreed sentencing agreed range.

Harrison expressed that he understood.

{¶ 27} When the trial court reviewed the possible sentences that Harrison faced, the trial court told Harrison that he was eligible for community control for tampering with evidence and having a weapon while under disability. The court further stated, however, that Harrison would not be placed on community control "given the agreed range of 15 to 20 years." Harrison stated that he understood. The court then said:

And then finally, sir, as I mentioned, do you understand – it's my understanding that the State and your attorney have agreed that the sentencing range for this case total, this case and 19 CR 657, will be between 15 and 20 years. And I will determine what the actual sentence is at the time of your sentence and that we're going to talk about the date of your sentence in just a minute.

After discussion with defense counsel, the court scheduled sentencing for both cases for August 20. After accepting Harrison's guilty pleas, the court reminded Harrison that it had ordered a presentence investigation in Case No. 2019-CR-657 and told Harrison that someone would be by to talk with him.

{¶ 28} At sentencing, the court imposed 20 years in prison, which was within the sentencing range to which the parties had agreed.

{¶ 29} Harrison first argues that the trial court "put pressure" on him by telling him that it would delay sentencing in Case 2019-CR-657 only until the August trial date in Harrison's other case (Case No. 2019-CR-288). We find nothing legally erroneous with the trial court's statement. The trial court had the authority to control its docket and reasonably informed the parties that it would not delay sentencing in Case No. 2019-CR-657 should the other case be delayed. Nothing in the court's statement indicated that Harrison would not get a fair trial if he went to trial on the felonious assault charge. In addition, the trial court did not suggest that there would be an effect on his sentences in either case if Case No. 2019-CR-288 were delayed.

{¶ 30} Harrison further claims that the trial court displayed bias against him through its statements at the plea hearing in Case No. 2019-CR-657 about a global resolution. There is nothing in the record to suggest that the trial court's statements about a global resolution affected Harrison's decision to enter a plea in Case No. 2019-CR-657 involving a single count of felonious assault. The court made no mention of a possible sentence for that case alone.

{¶ 31} Moreover, the trial court's statements at the plea hearing for Case No. 2019-CR-657 regarding a global resolution did not rise to the level of judicial interference in the plea negotiation process for Case No. 2019-CR-288. As stated above, a trial court is not required to accept a jointly-recommended sentence by the parties, and the court's statements regarding a global resolution of the two cases emphasized that the court could impose a sentence that differed from the parties' agreement. The court thus recommended that the parties seek the court's agreement before any hearing on a global resolution. By informing Harrison that it would not accept a recommendation of three

years in prison, but would accept a sentence of 20 years, the court did not interpose itself into the parties' negotiations. Rather, it indicated to the parties that the court was not inclined to accept a lenient three-year sentence and would be inclined to impose a lengthier aggregate prison sentence.

{¶ 32} Stated differently, the plea hearing transcript does not reveal a degree of participation in the plea bargaining process akin to the coercive tactics found in *Byrd*. Rather, the trial court's participation was in the nature of emphasizing the court's option not to accept a proposed agreed sentence and its general inclination regarding an appropriate aggregate sentence for both cases. The trial court did not cast doubt upon Harrison's right to a fair trial in either case. *Contrast In re Steinmetz*, 2d Dist. Montgomery No. 19254, 2002-Ohio-4685, ¶ 30 (the juvenile court improperly interfered in plea negotiations when it told the juvenile that it would impose a consecutive sentences if the juvenile "wasted the court's time," went to trial, and was found guilty).

{¶ 33} Harrison's assignment of error is overruled.

### IV. Conclusion

{¶ 34} The trial court's judgments will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Jamie J. Rizzo
Robert Alan Brenner

Hon. Mary Katherine Huffman