[Cite as *State v. Masters*, 2025-Ohio-1763.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-28 |
| | : | |
| v. | : | Trial Court Case Nos. 2024 CR 043; |
| | : | 2024 CR 132 |
| STORMIE D. MASTERS | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 16, 2025

. . . . . . . . . . .

CATHY J. WEITHMAN, Attorney for Appellant

KARA N. RICHTER, Attorney for Appellee

. . . . . . . . . . . .

HANSEMAN, J.

{¶ 1} Appellant Stormie D. Masters appeals from judgments of the Champaign County Court of Common Pleas that: (1) revoked her community control in Champaign C.P. No. 2024 CR 043 and sentenced her to 30 months in prison for the aggravated possession of drugs offense in that case; and (2) sentenced her to two 12-month prison terms in Champaign C.P. No. 2024 CR 132 for two counts of possession of drugs, to be

served concurrently with the 30-month prison term in Case No. 2024 CR 043. In support of her appeal, Masters contends that the trial court abused its discretion by revoking her community control and by sentencing her to prison in both cases. Masters claims that the trial court should have instead followed the State's recommendation for the trial court to sentence her to community control in accordance with the parties' plea agreement. For the reasons outlined below, we disagree with Masters's claims and will affirm the judgments of the trial court.

## Facts and Course of Proceedings

{¶ 2} On May 30, 2024, Masters pled guilty to one third-degree-felony count of aggravated possession of drugs (methamphetamine) in Case No. 2024 CR 043. After accepting Masters's guilty plea, the trial court sentenced Masters to a three-year term of community control with several conditions of supervision. Pursuant to the conditions of supervision, Masters was required to abide by the following terms.

(1) Follow all orders given to her by her supervising officer or other authorized representatives of the Court or the Department of Rehabilitation and Correction. (Standard Condition of Supervision No. 2)

(2) Always keep her supervising officer informed of her residence and place of employment, and obtain permission from her supervising officer before changing her residence or employment. (Standard Condition of Supervision No. 6)

(3) Not purchase, possess, use or have under her control any narcotic drug or

other controlled substance or illegal drugs, including any instrument, device or other object used to administer drugs or to prepare them for administration, unless lawfully prescribed for her by a licensed physician. (Standard Condition of Supervision No. 9)

(4) Not associate with persons having a criminal background or persons who may have gang affiliation, or who could influence her to engage in criminal activity, without the prior permission of her supervising officer. (Standard Condition of Supervision No. 13)

(5) Not be in the physical presence of Winter Eggers. (Special Condition of Supervision, p. 7)

Case No. 2024 CR 043 Judgment of Conviction (May 30, 2024) and Journal Entry Attaching Community Control Conditions (June 7, 2024).

{¶ 3} On September 16, 2024, approximately four months after Masters was sentenced to community control, Masters's probation officer filed a "Notice of Supervision Violation" with the trial court alleging that Masters had violated the five conditions of community control listed above. Specifically, Masters's probation officer alleged that Masters engaged in the following violations.

(1) Violated Standard Condition of Supervision No. 2 by failing to report to her supervising officer on or about September 11, 2024;

(2) Violated Standard Condition of Supervision No. 6 by moving without permission from her supervising officer on or about August 30, 2024 through September 12, 2024;

(3)     Violated Standard Condition of Supervision No. 9 by using methamphetamine on or about September 10, 2024;

(4)     Violated Standard Condition of Supervision No. 9 by using fentanyl on or about September 10, 2024;

(5)     Violated Standard Condition of Supervision No. 9 by possessing drug paraphernalia on or about September 12, 2024;

(6)     Violated Standard Condition of Supervision No. 13 by having contact with a prohibited individual, Matthew Grim, on or about August 30, 2024 through September 12, 2024; and

(7)     Violated a Special Condition of Supervision by being in the physical presence of Winter Eggers on or about August 31, 2024.

{¶ 4} As a result of the drug-use violations, on October 3, 2024, the State filed a bill of information in Case No. 2024 CR 132 that charged Masters with one fifth-degree-felony count of aggravated possession of drugs (methamphetamine) and one fifth-degree-felony count of possession of a fentanyl-related compound. As part of a negotiated plea agreement, Masters pled guilty to those charges and did not contest the merits of the alleged community control violations in Case No. 2024 CR 043. In exchange for Masters's guilty plea and her admission to the community control violations, the State agreed to recommend that Masters be sentenced to community control in both cases with the special condition that she gain admission to and successfully complete the treatment program at West Central Community Based Correctional Facility.

{¶ 5} On November 4, 2024, the trial court held a combined sentencing hearing

and revocation hearing for Case Nos. 2024 CR 043 and 2024 CR 132. After reviewing a narrative report prepared by the arresting officer in Case No. 2024 CR 043, a community control violation report prepared by Masters's supervising officer, and Masters's presentence investigation report ("PSI"), the trial court revoked Masters's community control and sentenced Masters to 30 months in prison for the aggravated possession of drugs offense in Case No. 2024 CR 043. The trial court also sentenced Masters to 12 months in prison for each of the two drug possession offenses in Case No. 2024 CR 132 and ordered those terms to be served concurrently to one another and concurrently to the 30-month prison term in Case No. 2024 CR 043. Masters therefore received a total sentence of 30 months in prison for both cases.

{¶ 6} Masters now appeals from the trial court's judgments revoking her community control and sentencing her to 30 months in prison. In doing so, she has raised one assignment of error for review.

**Assignment of Error**

{¶ 7} Under her sole assignment of error, Masters contends that the trial court abused its discretion by revoking her community control in Case No. 2024 CR 043 and by sentencing her to prison in that case and in Case No. 2024 CR 132. Masters claims that the trial court should have instead followed the State's sentencing recommendation and sentenced her to community control in accordance with the parties' plea agreement. We disagree.

{¶ 8} "The right to continue on community control depends upon compliance with

the conditions of community control and is a matter within the sound discretion of the trial court." (Citation omitted.) *State v. Eastman*, 2021-Ohio-392, ¶ 13 (2d Dist.). "Accordingly, we review the trial court's revocation of community control for an abuse of discretion." (Citation omitted.) *Id.* "An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. Pate*, 2021-Ohio-1838, ¶ 36 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 9} "When a defendant violates the conditions of his [or her] community control, 'R.C. 2929.15(B) provides the trial court [with] a great deal of latitude in sentencing the offender.'" *State v. Hampton*, 2023-Ohio-1591, ¶ 17 (2d Dist.), quoting *State v. Brooks*, 2004-Ohio-4746, ¶ 20. "A trial court has the option of imposing 'a longer period of community control, a more restrictive community-control sanction, or a prison term of any length within the range of that available for the original offense, up to the maximum that the trial court specified at the first sentencing hearing.'" *Id.*, quoting *Brooks* at ¶ 20, citing R.C. 2929.15(B).

{¶ 10} As previously discussed, in Case No. 2024 CR 043, the trial court decided to revoke Masters's community control and impose a 30-month prison term for the aggravated possession of drugs offense in that case. Upon review, we cannot say that revoking Masters's community control and sentencing her to prison was an abuse of the trial court's discretion. We reach this conclusion because there is no dispute that Masters violated several conditions of her community control. We find it significant that two of those violations involved illegal drug use that led to Masters's felony drug charges in Case

No. 2024 CR 132. Masters's other community control violations were due to Masters disassociating with her supervising officer and having contact with prohibited individuals. Specifically, the record indicates that Masters failed to report to her supervising officer on multiple occasions and failed to respond to her supervising officers' text messages and phone calls. In addition, Masters resumed a relationship with a known drug abuser and convicted felon, Matt Grimm, and engaged in prohibited contact with her sister, Winter Eggers.

{¶ 11} The record also indicates that Masters has not responded favorably to previous court-ordered substance abuse treatment programs. Masters's PSI indicates that Masters received residential treatment at McKinely Hall in 2019, after being sentenced to community control for a fifth-degree-felony count of aggravated possession of drugs in Clark County. Thereafter, Masters continued abusing drugs and was placed in a sober-living facility while on community control in the present case. Masters, however, left the sober-living facility on a weekend pass, relapsed, and thereafter resisted the facility's attempts to have her return.

{¶ 12} The record further indicates that Masters was out on bond for a fifth-degree-felony count of aggravated possession of drugs that was pending in Greene County when she violated her community control in the present case. Masters admitted that she had failed to report to the probation department for her presentence investigation in the Greene County case, which led to a capias being issued for her arrest.

{¶ 13} After considering the foregoing information, the trial court found that Masters "need[s] the penal sanction, punishment sanction, of a time-out" because her

"life is out of control." Sentencing Tr. (Nov. 4, 2024), p. 11. Upon review, we cannot say that it was unreasonable for the trial court to reach that conclusion and to revoke Masters's community control. Indeed, the record suggests that Masters was not a good candidate for community control since she had violated several court orders and had not responded favorably to community control in the past. Accordingly, the trial court's revocation of Masters's community control was not an abuse of discretion.

**{¶ 14}** Masters nevertheless argues that the trial court should have followed the State's recommendation to impose community control because it was part of the parties' negotiated plea agreement. According to Masters, she should have received the benefit of her bargain from the plea agreement, i.e., community control. This argument lacks merit because the plea agreement simply required the State to *recommend* community control at sentencing. Because the State did in fact recommend community control at sentencing, Masters received the negotiated benefit of the plea agreement. It is well established that trial courts " 'may reject plea agreements and . . . are not bound by a jointly recommended sentence.' " *State v. Greene*, 2024-Ohio-363, ¶ 37 (2d Dist.), quoting *State v. Underwood*, 2010-Ohio-1, ¶ 28; *State v. Harrison*, 2020-Ohio-4154, ¶ 19 (2d Dist.) ("[u]nless the court involves itself in plea negotiations or agrees to the terms of the agreement, the trial court is not bound by the plea agreement"); *State v. Alvarez*, 2003-Ohio-5094, ¶ 16 (2d Dist.) ("the sentencing court was not in any way bound by the state's recommendation [that defendant receive community control]"); *State v. Harvey*, 2019-Ohio-715, ¶ 7 (8th Dist.) ("[a] recommended sentence . . . is one in which the parties make a nonbinding recommendation to the court, which the court is not required to accept

or comment on"); *In re Disqualification of Mitrovich*, 74 Ohio St. 3d 1219, 1220 (1990) ("the acceptance or rejection of a plea bargain is within the sound discretion of the trial judge"). Therefore, the trial court was free to reject the State's recommendation for community control and, under the circumstances of this case, did not abuse its discretion by doing so.

{¶ 15} We note that before Masters admitted to the community control violations and entered her guilty pleas, she was well aware of the fact that the trial court could reject the State's recommended sentence. During the combined community control violation merits hearing and plea hearing, the trial court had the following discussion with Masters:

The Court: Your lawyer and the Prosecutor have talked to each other about both of these cases. I have not been involved in those discussions. I have not shared with anyone what I will do regarding sentencing. The only thing that the lawyers know is that I'll seek to follow the law. Do you understand that?

Masters: Yes, sir.

The Court: Do you understand that the Court is not required to follow the sentencing recommendation of the Prosecutor, your attorney, or yourself in either case?

Masters: Yes, sir.

Community Control/Plea Hearing Tr. (Oct. 7, 2024), p. 19-20.

{¶ 16} Masters also indicated that she understood the trial court could impose up to 36 months in prison for the aggravated possession of drugs offense in Case No. 2024

CR 043 and up to 12 months in prison for each of the drug possession offenses in Case No. 2024 CR 132. *Id.* at 15-16. Accordingly, Masters knew there was a possibility that she could receive a prison sentence as opposed to the State's recommended sentence of community control.

**{¶ 17}** To the extent that Masters is claiming the trial court abused its discretion by imposing a total of 30 months in prison for both cases, we note that : "This court no longer applies an abuse of discretion standard when reviewing felony sentences, as the Supreme Court of Ohio has made clear that felony sentences are to be reviewed in accordance with the standard set forth in R.C. 2953.08(G)(2)." *State v. McCoy*, 2016-Ohio-7415, ¶ 6 (2d Dist.), citing *State v. Marcum*, 2016-Ohio-1002, ¶ 10-16. *See also State v. Tolle*, 2024-Ohio-4709, ¶ 13 (2d Dist.) ("[a]ppellate review of prison sentences imposed for violations of felony community control sanctions is governed by the standard set forth in R.C. 2953.08(G)(2)"), citing *State v. Gibson*, 2017-Ohio-691, ¶ 14 (2d Dist.) and *Marcum*.

**{¶ 18}** Pursuant to R.C. 2953.08(G)(2), this court may vacate or modify Masters's sentence only if we "determine[ ] by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum* at ¶ 1. In both cases at issue, the trial court was not required to make any findings under the relevant statutes listed in R.C. 2953.08(G)(2); accordingly, we must simply determine whether Masters's sentence is otherwise contrary to law.

**{¶ 19}** " '[O]therwise contrary to law' means ' "in violation of statute or legal

regulations at a given time.' ' " *State v. Bryant*, 2022-Ohio-1878, ¶ 22, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990). This court has also defined "contrary to law" as " 'a sentencing decision [that] manifestly ignores an issue or factor which a statute requires a court to consider.' " *State v. Morgan*, 2023-Ohio-3913, ¶ 7 (2d Dist.), quoting *State v. Lofton*, 2004-Ohio-169, ¶ 11 (2d Dist.). "For example, '[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.' " *Id.*, quoting *State v. Brown*, 2017-Ohio-8416, ¶ 74 (2d Dist.). (Other citation omitted.)

{¶ 20} Also, "[f]or all [community control] revocations, the prison term must be within the range of prison terms available for the offense for which community control had been imposed and the term may not exceed the prison term specified in the notice provided to the offender at the original sentencing hearing." *State v. Monroe*, 2020-Ohio-597, ¶ 41 (2d Dist.), citing R.C. 2929.15(B)(3). At the original sentencing hearing, the trial court must "notify the offender of the specific prison term that may be imposed for a violation of the conditions of [a community control] sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation." *Brooks*, 2004-Ohio-4746, at ¶ 29.

{¶ 21} In Case No. 2024 CR 043, the 30-month prison term that the trial court imposed after revoking Masters's community control is within the statutory range of prison terms available for the third-degree-felony aggravated possession of drugs offense for

which Masters's community control was imposed. *See* R.C. 2929.14(A)(3)(b). Masters did not file a transcript of the original sentencing hearing in Case No. 2024 CR 043 as required by App.R. 9(B); therefore, we must presume the regularity of that proceeding and conclude that the trial court provided the required notification, i.e., that it could impose a specific prison term of 30-months in prison for a community control violation. *See State v. McCoy,* 2024-Ohio-98, ¶ 19 (2d Dist.) ("[a]bsent a transcript of the hearing, 'we cannot speculate what the testimony was at [the hearing], and we are constrained to presume the regularity of the proceedings below unless the limited record for our review affirmatively demonstrates error' "), quoting *Albritton v. White*, 2011-Ohio-3499, ¶ 15 (2d Dist.), citing *Banks v. Regan*, 2008-Ohio-188, ¶ 2 (2d Dist.); *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980) (when portions of the transcript necessary to resolve assigned errors are not part of the record on appeal, we must presume the validity of the lower court's proceedings and affirm).

{¶ 22} In Case No. 2024 CR 132, the concurrent 12-month prison terms that the trial court imposed for Masters's two fifth-degree-felony drug possession offenses are also within the statutory range of prison terms available. *See* R.C. 2929.14(A)(5). Masters, however, argues that these fifth-degree felonies normally involve placement on community control. Although R.C. 2929.13(B)(1) does provide for a presumption of community control for nonviolent fifth-degree felonies like the ones at issue here, the presumption only applies if certain conditions are met. One of those conditions is that "the offender previously has not been convicted of or pleaded guilty to a felony offense." R.C. 2929.13(B)(1)(a)(i). Here, because Masters had previously been convicted of third-

degree-felony aggravated possession of drugs in Case No. 2024 CR 043 and fifth-degree-felony possession of drugs in Clark County, the presumption for community control did not apply. Therefore, when sentencing Masters for her fifth-degree felonies, the trial court simply had to "comply with the purposes and principles of sentencing under [R.C. 2929.11] and with [R.C. 2929.12]." R.C. 2929.13(B)(2).

{¶ 23} Here, the record establishes that the trial court considered the principles and purposes of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12 when sentencing Masters in both cases. *See* Sentencing Tr. (Nov. 4, 2024), p. 14 and Judgment Entry, Case No. 2024 CR 132 (Nov. 4, 2024), p. 4-7. We note that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones*, 2020-Ohio-6729, at ¶ 42. "[W]hen reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and 2929.12, this court does not analyze whether those sentences are unsupported by the record, but only whether they are contrary to law." *McCoy*, 2024-Ohio-98, at ¶ 27 (2d Dist.), citing *State v. Dorsey*, 2021-Ohio-76, ¶ 18 (2d Dist.). Therefore, this court will not substitute its judgment for that of the trial court with regard to the trial court's application of R.C. 2929.11 and R.C. 2929.12. Rather, in cases such as this, we only determine whether the sentence imposed by the trial court was contrary to law.

{¶ 24} For the reasons discussed above, none of Masters's prison sentences are contrary to law. Because Masters's prison sentences are not contrary to law, and because

the trial court was not required to accept the State's sentencing recommendation and did not abuse its discretion by revoking Masters's community control, Masters's assignment of error is overruled.

## Conclusion

{¶ 25} Having overruled Masters's sole assignment of error, the judgments of the trial court are affirmed.

. . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.