[Cite as *State v. Davis*, 2026-Ohio-52.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-23 |
| Appellee | : | |
| | : | Trial Court Case No. 25 CR 5 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| DANIEL H. DAVIS, JR. | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 9, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

EPLEY, P.J., and LEWIS, J., concur.

ALANA VAN GUNDY, Attorney for Appellant
MATTHEW C. JOSEPH, Attorney for Appellee

TUCKER, J.

{¶ 1} Daniel H. Davis, Jr. appeals from his conviction following a guilty plea to one count of aggravated murder with a firearm specification.

{¶ 2} Davis alleges ineffective assistance of counsel based on his attorney's stipulation to a competency examination and failure to request a second opinion. He also argues that the trial court erred in finding that he had no mental-health issues and in failing to consider his mental-health history at sentencing. Finally, he contends the trial court erred in sentencing him to 30 years to life in prison without considering his mental-health issues.

{¶ 3} For the reasons set forth below, we find Davis's arguments to be unpersuasive and affirm the trial court's judgment.

## I. Background

{¶ 4} A grand jury indicted Davis on one count of aggravated murder, three counts of murder, and two counts of felonious assault with accompanying firearm specifications. The charges involved Davis driving to his father's house, retrieving a handgun from inside the house, meeting his father in the garage, and shooting his father twice. After he pled not guilty by reason of insanity, the trial court ordered a mental examination to evaluate his competence to stand trial and his mental condition at the time of the charged offenses. The examination was performed by a licensed psychologist who submitted a report finding Davis competent to stand trial and legally sane when he allegedly committed the offenses. The State stipulated to the psychologist's findings. Defense counsel stipulated to the report's

admissibility and "ha[d] nothing further as to competency or sanity." Davis then withdrew his insanity plea, and the trial court found him competent to stand trial. He later pled guilty to aggravated murder with a firearm specification in exchange for dismissal of all other charges and specifications. In his written plea, Davis acknowledged that he was not suffering from any mental condition that would interfere with his ability to make informed decisions on his own behalf. He also acknowledged being satisfied with his attorney's advice and competence.

{¶ 5} During his Crim.R. 11 plea hearing, Davis denied being on any prescription medications that would affect his ability to understand what was happening. He likewise denied being diagnosed with any mental illness that would affect his comprehension. Defense counsel opined that Davis understood what he was doing by pleading guilty. Davis responded appropriately to all questions, and the trial court found that he was alert and capable of participating in the plea hearing. At the conclusion of the hearing, the trial court accepted the guilty plea and made a finding of guilt.

{¶ 6} The trial court then held an evidentiary hearing prior to sentencing. It heard testimony from Davis, his mother, and two law-enforcement officers. It later imposed a sentence of 30 years to life in prison for aggravated murder plus a three-year consecutive prison term for the firearm specification. Davis timely appealed, advancing three assignments of error.

## II. Analysis

{¶ 7} The first assignment of error states:

**Mr. Davis Jr. was denied the effective assistance of counsel when trial counsel stipulated to the competency evaluation and failed to request a second evaluation, resulting in the trial court's acceptance of a plea**

**without adequately determining Mr. Davis Jr.'s competency in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶ 8} Davis contends his trial counsel provided ineffective assistance by stipulating to the competency evaluation and failing to request a second opinion. He claims the evaluation report was deficient and objectionable because it (1) invalidated the results of a test that had shown "an extremely elevated number of items in the psychopathological direction" and (2) stated that Davis had no history of medication or developmental disability, whereas his mother testified prior to sentencing that he had been prescribed a dozen medications and had been on an IEP plan in high school. Davis asserts that his attorney's ineffective assistance resulted in the trial court accepting his guilty plea without assurance that he could understand the proceedings, thereby calling into question the knowing, intelligent, and voluntary nature of his plea.

{¶ 9} We review alleged instances of ineffective assistance of counsel under the two-part analysis found in *Strickland v. Washington*, 466 U.S. 668 (1984), which the Ohio Supreme Court adopted in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail on an ineffective-assistance claim, a defendant must show trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus.

{¶ 10} Courts assess deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness." *Strickland* at 688. When making this determination, counsel's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Only when counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment" has counsel engaged in deficient performance. *Id*. at 687. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This requires the errors to be so significant as to "undermine confidence in the outcome." *Id*. The failure to make a showing of either prong of the *Strickland* inquiry is fatal to a claim of ineffective assistance. *Id*. at 692.

{¶ 11} A guilty plea waives ineffective assistance of counsel unless counsel's deficient performance negated the knowing, intelligent, and voluntary nature of the plea. *State v. Barnett*, 73 Ohio App.3d 244, 249 (2d Dist. 1991). In the present case, waiver does not apply because Davis's ineffective-assistance argument challenges his competence to stand trial and, by extension, his competence to enter a guilty plea. *See*, *e.g*., *State v. Littler*, 2023-Ohio-4759, ¶ 19 (4th Dist.) (recognizing that the competency standards for entering a plea and standing trial are the same).

{¶ 12} Under Ohio law, a defendant is competent to stand trial unless he is incapable of understanding the nature and objective of the proceedings or of assisting in his own defense. R.C. 2945.37(G). The question is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *State v. Lawson*, 2021-Ohio-3566, ¶ 49, quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960).

{¶ 13} With the foregoing standards in mind, we see nothing in the existing competency evaluation that reasonably should have caused defense counsel to challenge it or to request a second examination. On pages four and five of the competency evaluation report, the psychologist specifically addressed Davis's understanding of the proceedings,

his knowledge of criminal procedure, his understanding of the possible consequences, his appreciation of the importance of his personal involvement, his communication with counsel, and his ability to participate in his own defense. The report includes Davis's correct responses to questions addressing each of these issues. His responses reflected a clear understanding of everything, and they established that he could consult with his attorney and assist in his defense.

{¶ 14} As for defense counsel's performance, we note that counsel merely stipulated to the report's admissibility, while adding that he "ha[d] nothing further as to competency or sanity." Given the absence of any indication in the report that Davis was incompetent to stand trial, defense counsel did not provide deficient representation by failing to request a second opinion. *State v. Womack*, 2005-Ohio-2689, ¶ 21 (6th Dist.) (observing that "where there is no indication that a second examination would reveal a different conclusion, a defendant is hard-pressed to establish ineffective assistance of counsel for failing to request a second exam").

{¶ 15} Davis challenges the existing evaluation because the psychologist invalidated test results showing "an extremely elevated number of items in the psychopathological direction." He argues that a second test may have provided valid results and supported a different conclusion. The test at issue was the Minnesota Multiphasic Personality Inventory-3 (MMPI-3). The examiner ignored the test result, concluding that Davis had exaggerated his symptoms. The examiner noted that he had scored 113 when scores above 100 "are uncommon, even in individuals with genuine, severe dysfunction." Contrary to Davis's argument, we have no basis for concluding that a second evaluation likely would have produced a different result. Moreover, given his accurate responses to specific questions addressing his understanding of the proceedings and his ability to assist in his defense, his

6

attorney reasonably could have believed that even a different result on the MMPI-3 would not result in a finding of incompetence to stand trial.

{¶ 16} Davis next contends the examiner incorrectly found no history of medication or developmental disability. He argues that this finding conflicts with his mother's testimony prior to sentencing that he had taken a dozen medications and had been on an IEP plan in high school. In the cited portion of the report, the examiner noted that Davis had "no history of psychiatric hospitalizations or psychotropic medication intake prior to the alleged offenses, except for ADHD treatment as a child." In her subsequent testimony, Mother did not identify the medications that Davis had taken in high school. She only mentioned him experiencing ADHD as well as anxiety and depression. The fact that Davis previously may have taken some medications did not conflict with the examiner's finding of no history of psychiatric hospitalizations or psychotropic medications.

{¶ 17} As for the high school IEP plan, the examiner noted that Davis had been on such a plan "up to" his junior year before graduating with a 2.8 grade point average. It is apparent that the examiner simply did not equate the temporary existence of an IEP plan with a finding of a developmental disability. Once again, we see nothing about these aspects of the examiner's report that reasonably should have caused defense counsel to challenge it or to seek a second opinion.

{¶ 18} Finally, we note that even "[a] defendant with mental illness or intellectual deficiencies may still be competent to stand trial." *Littler* at ¶ 18. "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110 (1986). Davis responded appropriately when the examiner inquired about his understanding

7

of the proceedings and his ability to assist in his own defense. That being so, we see no basis for an ineffective-assistance claim predicated on defense counsel's failure to challenge the competency evaluation or to seek a second opinion. The first assignment of error is overruled.

{¶ 19} The second assignment of error states:

**The trial court erred and abused its discretion in finding that Mr. Davis had no mental health issues and in fail[ing] to consider and inquire into relevant evidence of Mr. Davis Jr.'s mental health, despite testimony that appellant was prescribed twelve medications and a victim impact statement referencing a child protective services case as well as psychiatric services.**

{¶ 20} Davis contends the trial court erred in not adequately considering and weighing his mental health before sentencing him. He cites sentencing-related evidence about him taking various medications, seeing a child psychologist earlier in life, reporting a history of abuse, having prior suicide attempts, being in a "dark place," and "struggling" mentally. Davis asserts that the trial court did not adequately weigh the mitigating effect of this evidence under R.C. 2929.12(C)(4), thereby abusing its discretion by sentencing him to 30 years to life in prison for aggravated murder.

{¶ 21} Upon review, we find Davis's argument to be unpersuasive. As an initial matter, we no longer review a trial court's sentencing decision for an abuse of discretion. *State v. Masters*, 2025-Ohio-1763, ¶ 17 (2d Dist.). Rather, we apply the standards found in R.C. 2953.08(G)(2). That statute does not permit us to modify or vacate a sentence based on a belief that the sentence is unsupported by the "seriousness" and "recidivism" factors found in R.C. 2929.12(A) through (D). *State v. Bryant*, 2022-Ohio-1878, ¶ 22. Because

8

R.C. 2929.12 is not among the statutes listed in R.C. 2953.08(G)(2), we may not "look behind" a trial court's sentencing decision to determine whether the record supports its analysis of the statutory seriousness and recidivism factors. *State v. Orr*, 2024-Ohio-4707, ¶ 12 (2d Dist.).

{¶ 22} In any event, the trial court heard and explicitly considered the evidence cited by Davis. It also explicitly considered the principles and purposes of sentencing and the statutory seriousness and recidivism factors. During the sentencing hearing, the trial court provided a lengthy explanation for the sentence it imposed. The trial court highlighted the premeditated nature of the killing and Davis's admitted lack of remorse afterward. The circumstances involved Davis telling his mother that he was going to kill his father. He left work and drove to his father's house. Once inside, he retrieved a handgun before meeting his father in the garage. He shot his father one time. After hearing his father still breathing, Davis fired a second shot to make sure he was dead. Davis then sent his mother a picture of his father's body before walking outside and waiting for police to arrive.

{¶ 23} After hearing victim-impact testimony requesting a sentence of life in prison without parole, the trial court specifically took into consideration that Davis had a "troublesome childhood" as well as "learning issues in high school" and "some behavioral mental health issues growing up." Although Davis disagrees with the trial court's weighing and evaluation of the sentencing evidence, it found a sentence of 30 years to life in prison justified by the nature of his conduct. We see no grounds for vacating or modifying the sentence under R.C. 2953.08(G)(2). The second assignment of error is overruled.

{¶ 24} The third assignment of error states:

**The trial court erred and abused its discretion in imposing a sentence of**

**thirty years to life in prison rather than twenty years to life by failing to**

9

**properly consider testimony and evidence of Mr. Davis Jr.'s mental health issues as mitigating factors under R.C. 2929.11 and R.C. 2929.12.**

{¶ 25} Davis again challenges his sentence on the basis that the trial court did not adequately consider his mental health when evaluating the principles and purposes of sentencing or the statutory seriousness and recidivism factors.

{¶ 26} Notwithstanding Davis's argument, we may not vacate or modify a sentence "based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 29. Even if we could consider the issue under the former abuse-of-discretion standard, we would find no error. The trial court fully considered the sentencing-related evidence, including his claimed mental-health issues, and found a sentence of 30 years to life in prison to be appropriate.

{¶ 27} Davis also characterizes his sentence as being contrary to law because the trial court did not consider mitigating mental-health evidence under R.C. 2929.11 and R.C. 2929.12. But even if we agreed that the trial court did not properly consider his mental health at sentencing (which we do not), such a shortcoming would not render his sentence contrary to law. "[A]n appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id*. at ¶ 34.

{¶ 28} In *State v. Bryant*, 2022-Ohio-1878, a four-member majority of the Ohio Supreme Court held that the foregoing rule did not apply when a trial court's sentencing findings allegedly were "pretextual" or where a sentence was based on "impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and R.C. 2929.12." The majority in *Bryant* reasoned that "when a trial court

10

imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law." But *Bryant* does not apply here.

**{¶ 29}** Davis argues that he "suffered from significant mental health issues over a prolonged period of time." In his reply brief, he asserts that the trial court imposed his sentence based on a mistaken belief that he had no history of mental-health problems. As a result, he contends the trial court did not treat his mental condition as a mitigating factor under R.C. 2929.12(C)(4), making his sentence contrary to the purposes of felony sentencing and contrary to law.

**{¶ 30}** As noted above, however, the trial court acknowledged sentencing-related evidence about Davis's history of taking medication, being on an IEP plan in high school, and having some mental-health history. Prior to imposing his sentence, it recognized his "troublesome childhood," his "learning issues in high school," and "some behavioral mental health issues growing up." It is apparent that the trial court was aware of the alleged issues and considered them when determining an appropriate sentence. The trial court's weighing of those considerations is beyond the scope of our permissible review. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones*, 2020-Ohio-6729, at ¶ 42. The present case bears no similarity to *Bryant*, which involved extraneous or impermissible sentencing considerations. The third assignment of error is overruled.

### III. Conclusion

**{¶ 31}** The judgment of the Miami County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

11

EPLEY, P.J., and LEWIS, J., concur.